McCALEB, Justice.
 

 This is an action by the owner of a 161 acre tract of land, containing a growth of long leaf pine timber, to recover damages for the wrongful cutting and removing of said timber by the defendants, Perry Timber Company, Luther F. Simmons and Walton B. Coney. The substance of the claim is that the defendant,' Simmons, committed a physical trespass and cut and removed the timber from the property during May, June and July of 1947; that this trespass emanated from a verbal agreement between Simmons and the defendant, Coney, under which the latter, erroneously claiming to be the owner of the timber, authorized Simmons to cut, remove and sell it in the form of pilings and poles, the gross receipts of the sale to be divided between the parties in proportions of 30% to Coney and 70% to Simmons; that, subsequently, Simmons entered into a collateral agreement with the other defendant, Perry Timber Company, whereby it purchased the. pilings and poles converted from the timber removed from the property by Simmons and that, from the gross receipts of the sale, Simmons received 70% and Coney 30% in conformity with their understanding. It was further charged in a supplemental petition that the trespass and actions pursuant thereto, i. e., the cutting, hauling, converting and marketing of the timber as piling and poles, were committed by defendants in moral bad faith and through their recklessness and wanton disregard of plaintiff’s property rights and that, as a result, plaintiff sustained damages in the sum of $17,759.24, for which defendants are responsible in solido.
 

 
 *269
 
 Defendants filed separately, in limine, exceptions of no cause of action which were overruled. Thereafter, each filed answer denying the trespass alternatively pleading that, if it should he found that any timber was taken from plaintiff’s land by Simmons, the cutting and removal was in good faith.
 

 After a trial on the foregoing issues, there was judgment in plaintiff’s favor and against the defendants in solido for the sum of $3416.35 with the reservation, however, that Coney’s solidary liability be limited to the sum of $1024.92, being 30% of the gross sales price of the timber removed from plaintiff’s land which he had received from Perry Timber Company. Judgment was also rendered against Simmons, separately and. individually, for the sum of $200, representing incidental damages attributable to the trespass. All defendants appealed but Simmons did not perfect his appeal by filing bond. Accordingly, the judgment is final as to him. And, since plaintiff has not appealed or requested an increase in the judgment against Coney and Perry Timber Company in his answer to their appeals, the issues have been narrowed to a determination of the correctness of the trial court’s decision in holding Coney and Perry Timber Company responsible.
 

 The evidence incontestably establishes that Simmons wantonly and recklessly cut and removed 1810 trees from plaintiff’s land, converted them into poles and pilings which he sold to Perry Timber Company for '$3416.35; that, of this sum, Coney received 30%, or $1024.92 and that Simmons and his sons, who were acting ostensibly as his agents and for his account, received the balance. This was the finding of the trial judge
 
 [1]
 
 and we concur in his view on this question of fact.
 

 The moral bad faith of Simmons is of importance to the appeal only insofar as it may affect the liability of Coney 'and Perry Timber Company. The judge de
 
 *271
 
 duced that these defendants were in good faith. Perry Timber Company therefore contends that, under the rule adopted by this court for the assessment of damages in trespass cases, it is liable for not more than the stumpage value of the timber purchased from Simmons and Coney. And Coney asserts that he is not liable for even the stumpage value (exactly the amount received by him) because, being in good faith, he is not a joint tortfeasor. This contention is advanced by Coney under his exception of no cause of action which has been reurged by him in this court.
 

 The point is not tenable under the exception. An exception of no cause of action addresses itself to the sufficiency in law of the petition and is triable on the face of the papers. Trumbaturi v. Katz & Besthoff, 180 La. 915, 1'58 So. 16; Rome v. London & Lancashire Indemnity Co., 181 La. 630, 160 So. 121 and Bartholomew v. Impastato, La.App., 12 So.2d 700. It is alleged in the original petition that Coney erroneously claimed to be the owner of plaintiff’s timber and, as such, entered into a verbal agreement with Simmons to cut and remove it and the supplemental petition charges that the trespass and conversion was committed in moral bad faith by the defendants. Even though the latter allegation be disregarded as a conclusion, it is patent that the original charge of Coney’s erroneous claim to ownership of plaintiff’s timber is an allegation of fault on his part which set the trespass and conversion in motion and had direct connection with the damage sustained.
 

 Actually, the contention of Coney is addressed to the merits of the case as it is based upon the judge’s finding that be was in good faith. Wherefore, his counsel argues that he is blameless in the premises as he merely sold his own timber to Simmons for 30% of its sale price when converted into poles and pilings; that, whereas he has received from Perry Timber Company $1024.92, representing 30% of the price for which plaintiff’s timber was sold, he did so under the mistaken belief that it was part of the proceeds derived from his own timber and that, while he is undoubtedly liable for that amount, he is not responsible to plaintiff as a joint tortfeasor for a wrong neither committed nor contributed to by him but only to Perry Timber Company under a quasi contract for money received through error as provided by Articles 2301 et seq. of the Civil Code.
 

 There is no merit in this proposition because it is founded on the false premise that the agreement between Coney and Simmons was a sale, whereas it was a joint adventure to share in the proceeds of the sale of poles and pilings, Coney to supply the standing timber and Simmons to undertake the labor of cutting and converting it into poles and pilings and hauling them to the mill for sale. Under Article 2439 of the Civil Code, three circumstances must concur in order to perfect a
 
 *273
 
 contract of sale, i. e., the thing, the price and the consent. Article 2456 declares that the sale is considered perfect between the parties as soon as there exists an agreement for the object and for the price thereof “although the object has not yet been delivered, nor the price paid” and, under Article 2464, the price must be certain,' that is, fixed and determined by the parties. The agreement between Coney and Simmons falls far short of these requirements. There was no sale of standing timber for which a fixed or determinable consideration was to be paid. And title to the timber did not pass from Coney to Simmons at the time of their verbal understanding. Indeed, since standing timber is an immovable under our law, Act 188 of 1904; Sabine Lumber Co. v. Trumbull, 158 La. 621, 104 So. 476, the verbal sale was null “as well as for third persons as for the contracting parties themselves” under Article 2440 of the Civil Code and testimonial proof thereof could not be admitted.
 

 Manifestly, as we have stated above, the agreement was an enterprise under which the timber of Coney would be cut and converted by the labor of Simmons into poles and pilings and sold for the mutual benefit of the parties. Such an engagement is commonly called a “joint adventure” which is defined to be “a special combination of two or more persons,-where in some specific venture a profit is jointly sought without any actual partnership or corporate designation, * * * ”. 48 C. J.S., Joint Adventures, § 1, p. 801; McCann v. Todd, 203 La. 631, 14 So.2d 469.
 
 [2]
 
 Under our law, the relations between joint adventurers are assimilated to those of partners inter se. Ludeau v. Avoyelles Cotton Gin Co., Inc., 164 La. 275, 113 So. 846 and Daily States Pub. Co. v. Uhalt, 169 La. 893, 126 So. 228.
 

 Hence, inasmuch as the partners were engaged in a commercial venture in the instant case, Coney might well have been liable in solido for all damages resulting from Simmons’ tort committed in pursuance of the joint enterprise even though it be assumed that he was without knowledge of the fact that a wanton trespass had been perpetrated. Birdsall v. Bemiss, et al., 2 La.Ann. 449; Guarantee Trust & Safe Deposit Co. v. E. C. Drew Inv. Co. et al., 107 La. 25l; 31 So. 736. However, in view of plaintiff’s failure to ask for an increase in the award against Coney, it is not necessary to decide on this appeal whether he should have been found responsible in solido with Simmons for the full amount of plaintiff’s damages. It suffices to say that, 'by retaining (despite plaintiff’s demand) part of the proceeds obtained in consequence of the unlawful
 
 *275
 
 trespass, Coney must be considered as having ratified the tortious act and therefore the trial judge made no mistake in condemning him in solido with the other defendants to the extent of the money he has wrongfully received.
 

 The main complaint of Perry Timber Company is that the judge erred in assessing damages against it based on the value of the poles and pilings at the time of their purchase because, as an innocent purchaser of the stolen and converted timber, it is not liable to plaintiff for more than the stumpage value.
 

 The measure of damages allowable for the unlawful cutting of timber is well settled in this State. If the trespass has been reckless and willful, the trespasser is said to be guilty of moral bad faith and is liable for the converted value of the timber without allowance or deduction for costs and expenses. In cases where the trespasser believes himself to be owner but should have known otherwise, either from information available to him or other ascertainable facts which would have placed a reasonably prudent man on notice, he is held to be in legal bad faith and the actual expenses incurred by him in converting the timber are to be deducted in assessing the damages. And in cases where the trespasser is in good faith, that is, where he believes that the timber belongs to him and there is no valid reason for him to suppose otherwise, he is liable only for its stumpage value. Bolles Wooden Ware Co. v. U. S., 106 U.S. 432, 1 S.Ct. 398, 27 L.Ed. 230; Guarantee Trust & Safe Deposit Co. v. E. C. Drew Inv. Co. et al., supra; St. Paul v. Louisiana Cypress Lumber Co., 116 La. 585, 40 So. 906; State v. F. B. Williams Cypress Co., 131 La. 62, 58 So. 1033 and State v. Jefferson Island Salt Mining Co., 183 La. 304, 163 So. 145 and authorities there cited.
 

 Counsel for Perry Timber Company profess that their client falls within the last category of cases above set forth, in view of the judge’s ruling that the timber was purchased from Coney and Simmons in good faith. And, in support of the point, they rely heavily on Guarantee Trust & Safe Deposit Co. v. E. C. Drew Inv. Co. et al., supra, wherein it was held that an innocent purchaser of standing timber is liable only for its value at the stump.
 

 The ruling in the Guarantee Trust case does not sustain the position of counsel for the reason that Perry Timber Company is not an innocent purchaser of standing timber (as Maguire was found to be in the cited case) but an innocent purchaser of poles and pilings which had been converted from standing timber by a trespasser in bad faith. Being thus situated, Perry Timber Company stands in the shoes of the willful trespasser and is liable for the value of the converted articles at the time of the purchase under the ruling of the Supreme Court of the United States in Bolles Wooden Ware Co. v. U. S., supra, which was cited with approval by this
 
 *277
 
 court in Guarantee Trust & Safe Deposit Company v. E. C. Drew Inv. Co., supra, and other cases.
 

 In the Bolles Wooden Ware case, the defendant,' having bought in good faith 242 cords of wood from a trespasser, was sued for its value and the question was whether its liability should be measured by the value of the timber on the ground after it had been cut or at the place to which it had been removed when sold. At the former place, it was worth
 
 25‡
 
 per cord and, at the latter, $3.50. The court held that the damages assessable were the value of the wood at the place and time of purchase as the purchaser obtained no greater rights than the trespasser; indeed, it stood in the shoes of the trespasser and was not entitled to set up any claim for work or labor bestowed upon the lumber by the latter.
 

 Both Coney and Perry Timber Co. have asserted, on this appeal, that the judgments against them should be reduced to the actual amounts paid for timber purchased from Simmons himself. It appears from the record that his two sons cut and converted part of the .timber comprising the total and that they were paid individually for such timber when purchased by Perry Timber Company. We see no merit whatever in this contention as it is too clear to warrant discussion that the sons of Simmons were working for. and with him and under the purported agreement with Coney.
 

 The judgment appealed from is affirmed.
 

 PONDER, J., recused.
 

 HAWTHORNE and HAMITER, JJ., dissent from the refusal to grant a rehear- . ing.
 

 [1]
 

 . In his reasons for judgment, the judge declares: “ * * * Simmons was horn and reared in the general locality where plaintiff’s land is situated. He is 59 years of age and for 40 years he has been engaged in the timber business. It is not reasonable to believe that an experienced timber man can cut over 160 acres of timber land and not know that he is committing a trespass. This is not a case where an adjoining owner went beyond his property line upon his neighbor’s land and cut timber, but one where Simmons through gross recklessness and ' carelessness or moral bad faith went upon plaintiff’s land and cut all Ms timber. To support this holding, it is only necessary to refer to his testimony where he stated that'he gave little-or no attention to the description of the Ricks’ property furnished by Coney, because ‘I knew where the property was at, that he was supposed to have bought’. Notwithstanding this admission, Simmons went upon plaintiff’s property and cut over the entire 161.07 acres and did not go upon the Ricks’ land.”
 

 [2]
 

 . See also Penny v. Gross & Janes Co., La.App., 25 So.2d 318 where the agreement under consideration, which was practically identical with that of Simmons and Coney, was held to be a joint adventure.