LANDRY, Judge.
In this action plaintiff, Breed T. Dunning-ton, seeks recovery of a portion of the purchase price paid defendant, Dr. Doyle C. Magee, for timber on certain lands owned by defendant and situated in Tangipahoa Parish. In substance, plaintiff contends that, upon the adverse claim of a third party, he, plaintiff, was evicted from and unable to cut the timber situated upon a certain 3.62 acre strip of land represented, pointed out and designated by defendant as comprising part of a 20 acre tract included and expressly described in the act of sale. Plaintiff alleges that as a result of defendant’s erroneous designation of the eastern boundary of the tract in question, plaintiff was compelled to pay the adverse claimant the sum of $60.00 (subsequently increased by amendment of plaintiff’s petition to $84.00) for timber cut thereon and, in addition, plaintiff was thereby deprived of timber valued at the sum of $1,472.00.
Defendant excepted to plaintiff’s petition as stating no right and no cause of action which said exceptions, after trial, were referred to the merits. Defendant then answered asserting in effect what amounts to a general denial. With the issues thus drawn the matter proceeded to trial following which our learned brother below rendered judgment in favor of plaintiff in the aggregate of $1,532.00. From the aforesaid unfavorable judgment defendant has appealed.
In consideration of the price and sum of $15,150.00 cash, under date of September 24, 1957, defendant formally sold and transferred to plaintiff the timber standing on several tracts of land belonging to defendant including, inter alia, the following described property:
Twenty (20). acres of land, more or less, situated in the Southeast Quarter of the Southwest Quarter and the Southwest Quarter of the Southwest Quarter of Section 22, Township 8 South, Range 6 East, and being bounded on the North by Gaylord Container Corporation, West by W. L. Harris, East by Dendinger, Inc., South by Salmer Brick and Lumber Company.
This entire controversy revolves around a dispute between the parties regarding the location of the eastern boundary of the hereinabove described 20 acre tract. Defendant maintains that, prior to the sale in question, he accompanied plaintiff upon an inspection tour of the various tracts included in the sale and pointed out the boundaries of each said tract. With respect to the 20 acre tract, defendant contends he advised plaintiff the eastern boundary thereof commenced at a galvanized iron pipe marker situated one and *393 one-half chains east of an old field line known as the “Gaylord Corner of the Gaylord 40” said “Gaylord Corner” being marked by a white painted marker. On the other hand, plaintiff contends defendant indicated that the eastern boundary of this particular tract lies one and one-half chains east of the galvanized iron marker or approximately three chains east of the Gay-lord Corner instead of one and one-half chains east of the Gaylord Corner as contended by defendant.
Predicated upon the well established rule that parol evidence is inadmissible to vary the terms of a written instrument, upon the trial of this cause in the court below, learned counsel for defendant objected to the introduction of any verbal or parol evidence by plaintiff to establish the eastern boundary of the 20 acre tract in dispute herein. In this respect, counsel for appellant maintains that the deed being clear and unambiguous concerning the boundaries of the tract in question, parol evidence was inadmissible to establish the boundaries of this particular tract. Our esteemed brother below referred defendant’s said objections to the merits and considered the hereinafter discussed parol testimony subject to defendant’s said objection.
The record reveals that property lines in the general vicinity of the aforesaid 20 acre tract have for some time been in disagreement, there having been some attempts by former owners to reconcile differences of opinion regarding the exact location of boundaries. With regard to the particular 20 acre tract involved in this litigation, it appears that the true eastern boundary thereof lies at one of three possible locations. First, there is the “Old Field Line” marked by the white painted marker and known as the aforesaid “Gay-lord Corner” which O. C. Plollister, Surveyor, asserts to be the true boundary between defendant’s said property and that of Mr. and Mrs. Weldon Poole abutting same on the east, the Pooles being the successors in title to Dendinger, Inc. Secondly, approximately one and one-half chains east of the “Gaylord Corner” is to be found the line marked by the aforementioned galvanized iron pipe. This line is considered the true boundary by defendant and one Lowell Cummings, Surveyor, the latter having made a survey of the general area some years prior to institution of the present suit. Finally, there exists a third and unmarked line situated approximately one and one-half chains east of the iron pipe marker relied upon by defendant. As hereinbefore shown, plaintiff maintains that it is this last line which defendant represented to be the correct eastern boundary of the tract in question. It is undisputed that the area encompassed between the Gaylord Corner and the iron pipe relied upon by defendant as designating the boundary, comprises 1.7 acres while the area lying between the iron pipe and the line asserted by plaintiff to lie one and one-half chains to the east thereof contains 1.92 acres of land.
Appellee testified unequivocally that during the negotiations which led to the ultimate sale, defendant accompanied plaintiff upon a tour of the various tracts of land for the express purpose of personally designating and indicating the lines of the properties. According to plaintiff, defendant specifically indicated the eastern line of the 20 acre tract as being one and one-half chains east of the galvanized iron pipe marker or three chains east of the Gaylord Corner. Plaintiff then obtained the services of a forester, Murray Brashears, to cruise the timber on the tracts which plaintiff intended to purchase. According to plaintiff, Brashears was instructed to obtain the property descriptions from defendant, cruise the timber falling within the lines designated by Dr. Magee and inform plaintiff of the results thereof. Predicated upon Brashears’ estimates of timber situated upon. the tracts involved in the sale, the contract price of $15,150.00 was determined and fixed as the compensation to be paid by plaintiff. After the agreement was consummated and plaintiff had begun l'og- *394 ging operations, plaintiff was informed by a Mr. Freshwater, a forester representing Mr. and Mrs. Weldon Poole, that plaintiff was encroaching and trespassing on the Poole’s property situated to the east of the 20 acre tract owned by defendant. Upon being advised of a possible trespass upon the Poole land, plaintiff immediately ceased operations pending a survey of the line by the Pooles. Subsequently, plaintiff was presented a survey by O. C. Hollister, Surveyor, indicating the true line to be the Gaylord Corner situated 3 chains to the west of the line which plaintiff maintains had been represented by defendant to be the boundary between the Magee and Poole lands. Plaintiff thereupon discontinued operations in the disputed area and paid the Pooles the sum of $84.00 for timber cut and ¡removed from the 3.62 acre strip lying east of the Gaylord Corner. According to plaintiff, Dr. Magee was advised of the adverse claim asserted by the Pooles. Ma-gee’s immediate response was that he owned the property to the point represented to plaintiff. In rebuttal, plaintiff explained that when defendant took him to view the several tracts involved in the timber sale, he, Dunnington, pointed to the Gaylord Corner and was advised by defendant that it was not the line. On Magee’s representation they proceeded one and one-half chains farther east and found the iron pipe marker. According to plaintiff, defendant stated the line lay one and one-half chains east of the iron pipe. Plaintiff also expressly denied that defendant advised him the location of the line was in dispute or that there was any question concerning the correct eastern boundary of the tract.
Testifying on behalf of plaintiff-appellee, Murray Brashears, an independent forester, stated that at plaintiff’s request he estimated the timber on defendant’s property prior to the sale. He also testified that Dr. Magee gave him the legal descriptions of the various tracts. Dr. Magee instructed Brashears to locate a certain corner of the Gaylord property (adjoining on the north) which corner was marked by a white stob. From said corner Brashears was told to proceed easterly a distance of one and one-half chains to a galvanized iron pipe and that the boundary lay one and one-half chains east of the pipe. Brashears stated further that defendant was not only most explicit in his instructions but also repeated them. Based upon defendant’s said instructions, Brashears found the iron pipe one and one-half chains east of the Gaylord Corner from which point he measured an additional one and one-half chains easterly. He then turned south and found a faded painted line which he used as the eastern boundary. The line thus employed was not a regular survey line and there was no definite corner. Brashears also stated that he usually made his own locations but considering defendant was so specific and positive about the three chain distance from the Gaylord Corner, he, Brashears, included the strip in his estimate. He reiterated that Dr. Magee gave him specific instructions twice on how to locate the east line three chains from the Gaylord Corner.
After locating the eastern boundary in conformity with defendant’s instructions, Brashears proceeded west 20 chains pacing the distance to a point where the timber had been previously cut on the west edge of defendant’s property. The area therein encompassed was estimated by him to include 20 acres although he conceded that since he determined the distance by pacing he might be in slight error in this regard. His estimation of the acreage would be substantially correct only if the property were 10 chains in width. In fact, however, the tract is between 12 and 13 chains wide consequently with a northern boundary of 20 chains the tract would contain slightly in excess of 25 acres. Brashears further stated that the previously cut strip on the west end of the 20 acres comprised between 5 and 6 acres. He was familiar with the Gaylord property on the north including the Gaylord Corner known as the Gaylord 40 because he had previously worked for Gaylord for 5 years and possessed a copy of their ownership map.
*395 Mr. R. F. Freshwater, a consultant forester, testified on behalf of defendant and stated that he was employed by the Pooles from 1957 to 1959 to guard their property against trespassers and fire. He had also worked for Gaylord for approximately 12 years and knew the established corners of the Gaylord properties. When he observed timber being cut on the property which he believed to be owned by the Pooles, he obtained Mr. Poole’s permission to engage Mr. Hollister to re-survey the property and establish the corners. When Hollister’s survey confirmed his suspicion that plaintiff was cutting timber on the Poole property, Freshwater presented appellee a statement in the amount of $84.00 for 14 trees plaintiff had cut on the Poole property. Mr. Freshwater was aware that there was uncertainty concerning the location of property lines in Section 22. He stated there were two or three sets of lines made by qualified surveyors and foresters who were not qualified surveyors. The basis of Freshwater’s knowledge of the lines was an old Hollister survey made for Gaylord. Relying on Hollister’s survey, Freshwater painted all of Poole’s lines in Section 22 in accordance therewith.
Defendant-appellant testified that prior to execution of the sale to plaintiff, he accompanied plaintiff to each tract and designated the lines of every parcel. He advised plaintiff that the location of the east boundary of the 20 acre tract was in question. Defendant also stated that he informed plaintiff a survey had been made and the property lines on both the east and west had been established 1J4 chains east of the location which defendant believed to be correct. Dr. Magee stated he informed plaintiff that Harris, owner of adjoining property to the west, had cut timber from a strip 1 '}/i chains east of the line which he, Magee, believed to be his west boundary but that upon a survey being made of the section by Lowell Cummings, Surveyor, defendant found he was mistaken in this regard. According to defendant, the Cummings survey was generally accepted in the area, even by Mr. Freshwater. Following the Cummings survey, Dr. Magee employed one Morris Kemp to cut pilings from the li/z chain strip lying between the Gaylord Corner and the line marked by the iron pipe. Mr. Kemp had previously cut pilings-for Dendinger who then owned the Poole property. The Dendinger owners were aware of Kemp’s cutting pilings for Magee on the li/2 chain strip lying between the Gaylord Comer and the iron pipe and raised no objection thereto. Defendant stoutly denied having told anyone his line extended Vl/2 chains east of the iron pipe. He also testified he had been unable to find any line east of the iron pipe and could not account for plaintiff’s misunderstanding relative to the location of the east line of the 20 acre tract.
Morris C. Kemp, called as a witness by defendant, confirmed that he cut pilings from the 20 acre tract in 1957 pursuant to employment by Magee. According to Kemp, defendant showed him the lines pursuant to which Kemp cut to the survey line situated approximately 100 feet east of the old field line or Gaylord Corner.
A stipulation appears of record to the effect that if one Jeff McKinney (who also had occasion to cut timber from this tract) were called to testify, he would aver substantially to the same effect as Mr. Kemp.
Lowell Cummings, Registered Surveyor, testified he made three surveys in Section 22 for Dendinger, Bolivar Kemp and Bryan Smith and also surveyed some property for defendant. Fie had been employed extensively by Dendinger (Poole’s ancestor in title) to survey Dendinger property wherever located. In 1949 and 1959, Cummings surveyed all of Section 22 and, after some difficulty, located the original government comers. At the southwest corner he recovered three of the witness trees, which, according to his recollection, were hardwood trees that had blown over. He recovered the mounds left by the fallen trees and confirmed the location by relation thereof to other points as correct. Cum *396 mings began his survey from the northeast corner of Headright 51 and worked from that point. He found no line l}/z chains east of the correct survey line marked with the iron pipe. It was Cummings’ recollection that defendant’s property was situated entirely in the Southwest quarter of the Southwest quarter of Section 22. In this regard he is corroborated by Hollister although Cummings and Hollister are not in accord regarding the location of the section •corners.
Bryan Smith, a logger familiar with the area by virtue of his past timber operations, testified he accompanied Lowell Cummings when the latter surveyed Section 22. When the survey was conducted he noted an apparent conflict between section lines in Sections 21 and 22 involving approximately l]/2 chains. He was aware that at the time several law suits were pending between various owners as a result of the uncertainty regarding location of lines. Smith stated that to correct the seeming discrepancy all lines had to be moved eastward a distance of 1)4 chains. According to Smith, there were many paint marks and blazes in the area obviously made by foresters estimating and selecting timber for cutting and also by straw and wood haulers. He found no line 1J4 chains east of the iron pipe marker. In confirmation of the accuracy of Cummings’ survey, he stated that when he accompanied Cum-ings they referred to the old government field notes and all the old topographical landmarks coincided exactly with Cummings’ measurements.
J. W. Smith, whose business is that of timber and lumber, made a tree count on the 1.7 acres lying between the Gaylord Corner and the iron pipe survey line. Approximately 114 chains east of the iron pipe survey line he noted a meander line of blazes which he did not consider a line as it did not run north and south but rather meandered in all directions.
O. C. Hollister, Registered Surveyor, testified he surveyed the property twice — first for Weldon Poole at the request of Freshwater and later for plaintiff, Dunnington. He determined that the property in question is situated in the Southwest quarter of the Southwest quarter of Section 22, rather than partially in the Southwest quarter and partially in the Southeast quarter of the Southwest quarter of the section as stated in the timber sale between plaintiff and defendant.
Mr. Hollister commenced his survey by locating the section corner of Sections 21 and 22 which had been established approximately 35 years previously by a Mr. Moore, assisted by Hollister then employed by Moore as an apprentice. According to Hol-lister, the conditions described by Cummings with respect to the location of Section 22 were incorrect. The old witness trees marked by Moore in 1925 were still standing and there also remained the rotted stump of a Magnolia tree and other stump holes. He considered the references to landmarks in old government field notes not sufficiently accurate to be of value.
In addition, Hollister testified as follow
“Q And you located that (the southwest corner of Section 22) yourself with Mr. Moore about in 1925?
“A Yes, I was helping him at the time as apprentice.
“Q Does that corner check out insofar as this northeast corner of Section 51 your Headright, that runs into that?
“A No it doesn’t.
“Q It does not run into it?
“A That corner was established by Mr. Pugh about in 1945 or 1946, or somewhere along in there, and Mr. Moore and I always knew it was wrong but other people used it because it was an old line over east but it was wrong, that was about at the southeast corner of Section 21, and Pugh started there and measured back to that old line and he thought he found the corner, but *397 I well remember when those pines came up there, that they call the corner trees, when we were out there there was nothing but flat country that looked like it had been plowed by hogs, there wasn’t anything on the ground but palmetto and a few little old scrubby pines around.
“Q And the southeast corner of this Section 22 — is it well defined or is it in question ?
“A There are two corners there, Mr. Moore had one there where they are using it now, about lji/¿ chains apart, and I think Mr. Moore’s is about right, but there is no way to actually prove it.
"Q But there is no question about the southwest corner?
“A No.”
Based on his surveys of the property, Hollister was of the opinion that, measuring from the east line of Harris’ five acre tract bounding defendant’s property on the west, defendant’s east line would commence at the east edge of the old field line cornering on the Gaylord Corner. He further noted that there was an old buggy axle marking this line and converging thereon he found old field fences. Hollister concluded that the old field line was defendant’s correct eastern boundary. He also observed that the timber had been removed from approximately one and three quarter acres of the westernmost portion of defendant’s 20 acre tract which cutting he estimated had taken place some 4 to 5 years previous.
Recognizing there was disagreement concerning the true location of property lines in Section 22, Mr. Hollister testified as follows:
“A All the evidence of those corners is about gone and there are 2 or 3 sets of corners, or lines, all through that country that have been run by field men for Salmen and Dendinger and others. Ike Sharp and a whole lot more, that have the whole system just all out of whack everywhere.
“XQ Did you know of any conflict in the lines in that area?
“A All over that area. Nearly all of them are wrong.
“XQ There is a conflict in that area?
“A Yes, in fact, there are 3 or 4 sets of lines.
“BY THE COURT: Are you sure that your line is correct, you can’t be mistaken ?
“A Yes, I am absolutely sure.
“Q You are positive you cannot be mistaken?
“A No sir, not on that section corner I can’t be mistaken.”
By defendant’s own admission he claims ownership of and intended to sell plaintiff all timber situated upon the 1.7 acres lying between the Gaylord 'Corner and the iron pipe marker. Our foregoing analysis of the testimony adduced herein clearly reveals that defendant’s ownership of all property situated east of the Gaylord Corner is in dispute and that there is an outstanding adverse claim thereto — namely, the Pooles’ assertion of ownership thereof. It is equally obvious that title to the disputed property cannot be resolved in the instant litigation inasmuch as the adverse claimants are not parties to these proceedings.
Under the circumstances herein shown, the timber purchaser can neither be expected nor required to assert his vendor’s title; it was incumbent upon defendant to protect plaintiff from eviction which obligation defendant refused to discharge. In this regard it is undisputed that defendant did nothing except assure plaintiff that the correct line was as designated by defendant. It is likewise conceded that de *398 fendant has since sold the 20 acre tract in question.
When faced with the adverse claim of Poole it was sufficient for plaintiff to call upon his vendor to avert the threatened eviction. This is all plaintiff was legally required to do. It was not incumbent upon plaintiff to ignore the adverse claim of ownership at his own peril. In the event Poole’s claim was well founded, plaintiff, by ignoring the claim of adverse ownership and proceeding with timber cutting operations on Poole’s property, would have subjected himself to penalties for willful trespass. See Kennedy v. Perry Timber Co., et al., 219 La. 264, 52 So.2d 847.
Defendant concedes plaintiff was properly evicted from the area situated east of the survey line marked by the iron pipe but maintains he did not sell or purport to sell plaintiff any timber located east of that point. Although defendant vehemently denies having represented to plaintiff that the 20 acre tract extended 1J4 chains east of the iron pipe marker, his testimony in this respect is vigorously denied both by plaintiff and Brashears.
Considering the state of the property lines as hereinabove set forth, it is not surprising that the parties misunderstood each other regarding the location of the lines.
In attempting to invoke the parol evidence rule herein, defendant in effect contends the description in the sale being clear and describing with certainty 20 acres of land by metes and bounds, parol evidence was inadmissible to vary its terms or establish plaintiff’s alleged eviction from properties not owned or claimed by defendant. Defendant also argues that plaintiff purchased the timber on 20 acres of land, defendant owned 20 acres and all that plaintiff is entitled to is the timber on the 20 acres actually owned by defendant irrespective of the location of the property lines.
Under the evidence and pleadings appearing in the record, we conclude defendant’s position regarding applicability of the parol evidence rule is clearly without merit. It is well settled in our jurisprudence that parol evidence is admissible to establish error with respect to a written agreement or contract. Brulatour v. Teche Sugar Co., 209 La. 717, 25 So.2d 444.
Our independent consideration of the evidence of record herein convinces us beyond doubt there was error and misunderstanding between plaintiff and defendant respecting the thing sold. We are also convinced our learned brother below correctly concluded defendant misreprsented the location of the east line of the 20 acre tract in question and, acting upon said erroneous designation, plaintiff’s estimator included the timber situated on the disputed strip in his estimate upon which plaintiff predicated the purchase price. We are equally certain, however, that defendant’s error in this respect resulted from the obviously confused state and condition of property lines in the general vicinity. The fact remains, nevertheless, that although made in good faith and with no intention to defraud, error was committed upon which plaintiff relied to his detriment. Plaintiff having alleged and proved error is entitled to the relief prayed for.
By stipulation appearing of record, it is conceded that the timber on the 3 chain strip situated between the Gaylord Corner and the point which plaintiff and Brashears understood to be defendant’s east line, is valued at the sum of $1,472.00. Although plaintiff’s initial petition was amended to seek recovery of the additional sum of $84.-00 paid Poole rather than the $60.00 originally claimed in this regard, the district court rendered judgment in favor of plaintiff for only $1,532.00 instead of $1,556.00 as called for in plaintiff’s amended petition. Plaintiff having neither appealed nor answered defendant’s appeal, the resulting error cannot be corrected.
For the reasons hereinabove set forth, the judgment of the trial court is affirmed.
Affirmed.