BOLIN, Judge.
This is a suit in tort for defendant’s alleged wrongful cutting of timber on forty acres of land belonging to plaintiff in Jackson Parish. Coupled with plaintiff’s demands for damages is a prayer for injunction to prevent the further cutting of timber on the described property. For written reasons the lower court granted the injunction but rejected plaintiff’s demands for damages and prorated the costs. From such ruling plaintiff appeals.
*670 We shall briefly state the facts as we find them. On August 28, 1943, J. M. Bunn sold the forty acres in question to plaintiff. Shell, the purchaser, immediately went into possession of the property but neglected to file his deed of record until March 24, 1958. J. M. Bunn died on July 18, 1953, and by appropriate succession proceedings Amy Bunn Greer, wife of defendant and one of the heirs of the deceased, was recognized and placed in possession of an undivided interest in J. M. Bunn’s estate, included therein being the forty acres previously sold to Shell in 1943. Failure of Shell to record his deed no doubt accounts for the inclusion of this forty acres in the Bunn Estate. On January 4, 1958, Amy Bunn Greer entered into a voluntary act of partition with her co-heirs. In this instrument she was declared to be the owner of the forty acres here involved.
During the latter part of March, 1958, defendant entered upon the tract in question and began cutting pulpwood. When plaintiff received information concerning the cutting of pulpwood on his property, he checked into the matter and for the first time found that his deed to the property had never been filed for record. Soon thereafter he recorded the instrument, and by letter dated March 26, 1958, notified Mr. Greer to discontinue trespassing on his land. Following this letter, receipt of which was acknowledged by both Mr. and Mrs. Greer, no more pulpwood was cut from the land during that particular year.
However, during the early part of 1959 pulpwood cutting on the property was resumed, but on this occasion it was done by Owen McClendon, Timmothy McClendon and J. T. Carprue, acting under the direction and supervision of defendant. The pulpwood from the second cutting was hauled to West Monroe where it was sold to S. J. Monroe.
Sometime later in 1959 some larger timber was cut from the property by another person, also under the supervision and direction of defendant, and this timber was sold as saw logs to Browder Lumber Company and to Lakeside Lumber Company. The present suit, filed soon after the cutting of the saw logs, has for its purpose recovery in damages for the timber which was cut and removed from plaintiff’s land and also the prevention by injunctive process of any further trespass on the land.
From our study of the written opinion of the trial judge we are uncertain whether plaintiff’s demands were rejected because the lower court concluded that Mr. and Mrs. Greer were in good faith or because it felt that Mr. Greer was acting as agent for his wife rather than in his own behalf. Whatever the reasons might be, we feel the judgment appealed from is clearly erroneous.
Plaintiff’s claims for damages and for injunctive relief are based upon both his ownership and his possession of the property in question, proof of either of which will support the action. See Pfister v. St. Bernard Cypress Co., Ltd. (1924), 155 La. 575, 99 So. 454.
In his answer defendant denied Shell’s possession or ownership of the property, but, to the contrary, averred that his wife was owner. During the trial there was no evidence presented tending to prove actual possession on the part of Mrs. Greer, and the only evidence of her ownership consisted of the judgment of possession in the Succession of J. M. Bunn, by which all of the heirs were recognized and placed in possession of the subject property and the subsequent act of partition by which Mrs. Greer was allotted the forty-acre tract. Neither of the aforementioned instruments is sufficient to vest title in Mrs. Greer since such acts are-merely declaratory of title and cannot, in themselves, transfer title. If the ancestor in title did not own the property at the time of his death, the heir cannot enhance his title by an ex parte judgment of possession and a voluntary act of partition. See Thurmon v. Hogg et al. (1954), 225 La. 263, 72 So.2d 500.
*671 It is also contended by defendant that he neither cut plaintiff’s timber nor had it done. In effect, he says that if anyone was responsible for having timber cut it was his wife. Even if this defense could be maintained as a matter of law, we do not find it supported by the evidence in the case. We are satisfied defendant was directly in charge of the people who went upon plaintiff’s property in the early part of 1958 and cut and removed approximately fourteen cords of pulpwood, after which defendant and his wife were notified to cease such trespass and no more timber was cut for approximately a year. However, cutting was resumed in January of 1959, when 12.0225 cords of pulpwood were removed from plaintiff’s land, and later in 1959 a large number of saw logs were cut and sold from the subject property. Without reviewing the evidence in detail, we think the record affirmatively shows the entire operation was under the direct supervision of Mr. Greer.
It seems to be defendant’s contention that he was in actual good faith in cutting plaintiff’s timber and, as a consequence, should be excused from responding in damages. This is clearly not the law, for the good or bad faith of a trespasser does not excuse him from liability but affects only the amount of the recovery. Such is made clear in the following cases: Kennedy v. Perry Timber Co. (1951), 219 La. 264, 52 So.2d 847; Terry v. Butler (1960), 240 La. 398, 123 So.2d 865.
Left for consideration is the matter of computing the amount of damages to which plaintiff is entitled as recompense for the timber wrongfully cut and removed from his property. The method of computing such damages is set forth in Terry v. Butler, cited supra, as follows:
“Thus, in Kennedy v. Perry Timber Company, 219 La. 264, 52 So.2d 847, 851, (primarily relied on by plaintiffs), this court said: ‘The measure of damages allowable for the unlawful cutting of timber is well settled in this State. If the trespass has been reckless and willful, the trespasser is said to be guilty of moral bad faith and is liable for the converted value of the timber without allowance or deduction for costs and expenses. In cases where the trespasser believes himself to be owner but should have known otherwise, either from information available to him or other ascertainable facts which would have placed a reasonably prudent man on notice, he is held to be in legal bad faith and the actual expenses incurred, by him in converting the timber are to be deducted in assessing the damages. * * * ’ While in the Kennedy case we did not spell out what was meant by the term ‘converted value’ used in referring to the trespasser in moral bad faith, the remainder of the quoted language clearly shows that the court intended that the owner would be entitled to the value of the product as converted by the trespasser.”
We think defendant was in legal rather than moral bad faith in cutting the timber for the reason that, although he thought his wife owned the property, this conclusion was based on an erroneous understanding of both the law and the facts. We find defendant received the total amount of $865.90 for the timber and pulpwood cut from plaintiff’s property, and that it cost him $486.13 to cut and haul this timber, leaving a balance of $379.77 for which plaintiff is entitled to recover.
For the reasons assigned the judgment appealed from is affirmed insofar as it enjoins defendant or his agents from cutting timber or trespassing on the following described property:
Northwest Quarter of Northeast Quarter (NWj4 of NEJ4) of Section Eight (8), Township Fifteen (15) North, Range One (1) West, containing Forty (40) acres, more or less, located in Jackson Parish, Louisiana.
*672 The judgment appealed from is reversed insofar as it rejects plaintiff’s demands for damages, and
It is now ordered, adjudged and decreed that there be judgment in favor of L. G. Shell and against Willard Greer in the sum •of Three Hundred Seventy-nine and 77/100 ($379.77) Dollars, together with legal interest thereon from judicial demand until paid.
It is further ordered that defendant pay all costs of this suit, including the cost of this appeal.
Affirmed in part and reversed in part.