218 So.2d 109 (1969)
Clementine Grantadams KNOLL et al., Plaintiffs-Appellees,
v.
DELTA DEVELOPMENT COMPANY et al., Defendants-Appellants.
No. 2495.
Court of Appeal of Louisiana, Third Circuit.
January 16, 1969.
Rehearing Denied February 13, 1969.
Writ Refused April 3, 1969.
*110 Roy & Roy, by Chris J. Roy, Marksville, for defendants-appellants.
Riddle & Knoll, by Charles A. Riddle, Jr., Marksville, for plaintiffs-appellees.
Before FRUGÉ, HOOD and CULPEPPER, J.
HOOD, Judge.
This is an action for damages for illegal trespass and for the rents and revenues allegedly due plaintiffs because of the use of their land by defendants. The suit was instituted by the owners of an undivided 19/22 interest in the affected tract of land. The defendants are Delta Development Company, Inc., and Harold Passmore. Defendants answered denying liability, and they reconvened demanding judgment for amounts allegedly due them for improving plaintiffs' land.
Judgment on the merits was rendered by the trial court in favor of plaintiffs, awarding them damages in the sum of $2209.18, and rejecting defendants' reconventional demand. Defendants appealed. Plaintiffs answered the appeal, contending that the award should be increased.
Defendants are regularly engaged in purchasing or leasing large tracts of prospective farmland, and in clearing the affected property and putting it into cultivation. Passmore is president and general manager of Delta, and he individually, as well as the corporation, conducts farming and land-clearing operations. At times the above mentioned leasing, clearing and farming operations are conducted by the corporation. Frequently, however, they are conducted jointly by Passmore and the Delta Company, and on some occasions they are conducted by Passmore, individually.
The property owned by plaintiffs and on which the trespass was committed is a 60-acre tract of unimproved, wooded land, located in Avoyelles Parish. It is bounded on the south and east by the banks of the Red River. Some time prior to May, 1966, Passmore obtained leases affecting other property in that vicinity, one of which leases affected a tract of land, known as *111 the Hewes property, which tract is located north of and adjacent to plaintiffs' land. Passmore, at about that time, also attempted to obtain a lease from plaintiffs affecting this 60-acre tract of land, but the parties were unable to agree on terms so Passmore's efforts to lease that tract were unsuccessful.
Beginning in May, 1966, defendants began clearing timber from the Hewes property and other lands in that area. In connection with these operations, however, they also cleared and denuded 24.5 acres of plaintiffs' property, without any authority to do so. The portion of plaintiffs' property which was cleared extended from the west to the east boundaries, and it is located about midway between the north and south lines of the 60-acre tract. The timber which was cut from plaintiffs' property was left on the ground and eventually it decayed and became worthless. After the 24.5-acre portion of plaintiffs' land had been cleared, defendants planted, cultivated and harvested crops of soybeans on the cleared portion during the 1966 and 1967 crop seasons.
On March 9, 1967, the Delta Company acquired a relatively small undivided interest in this 60-acre tract from one of the undivided owners. The clearing operations had been completed and the property had been farmed for one year, 1966, before this interest was acquired. Defendants, however, cultivated and harvested another crop of soybeans on the property during the 1967 crop season, that being after Delta had acquired this undivided interest.
One of the items of damages claimed by plaintiffs is the value of the marketable timber which defendants cut from their land.
Defendants concede that they cleared and cultivated 24.5 acres of plaintiffs' land without authority. They contend, however, that they were in good faith, while plaintiffs contend that they were in bad faith. One of the issues presented on this appeal, therefore, is whether defendants were in good faith, or whether they were in moral or legal bad faith in trespassing on and cutting timber from plaintiffs' property.
The good faith of a trespasser who cuts timber from another's land does not excuse him from liability, but it does have the effect of limiting or reducing the extent of his liability. When the trespasser is in good faith, that is, when he believes that the timber belongs to him and there is no valid reason for him to suppose otherwise, he is liable only for its stumpage value. If the trespasser believes himself to be the owner, but should have known otherwise either from information available to him or from other ascertainable facts which would have placed a reasonably prudent man on notice, he is held to be in legal bad faith, and he is liable for the converted value of the timber less the actual expenses incurred by him in converting it. If the trespass has been reckless and willful, the trespasser is said to be guilty of moral bad faith, and he is liable for the converted value of the timber, without allowance or deduction for costs and expenses. Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847 (1951); Terry v. Butler, 240 La. 398, 123 So.2d 865 (1960); Shell v. Greer, 171 So.2d 669 (La.App. 2d Cir. 1965); J. F. Ball & Bro. Lumber Co. v. Simms Lumber Co., 121 La. 627, 46 So. 674 (1908).
In the instant suit Passmore testified that when these clearing operations were conducted he thought the portion of plaintiffs' property which was cleared was a part of a tract of land which he had leased from another owner. He stated that he based that conclusion partially on an incorrect map which had been furnished to him by a neighboring landowner, Hewes, partly on the erroneous assumption that plaintiffs' land was bounded on the south by a section line rather than by the river, and to some extent on the incorrect assumption that a line which had been marked on trees in *112 that area accurately showed the boundary between plaintiffs' land and the property on which he had a lease. The incorrect map which had been furnished to Passmore by Hewes, and on which the former relied, was not produced at the trial and thus it is not in evidence.
Plaintiffs, in support of their contention that defendants were in bad faith, point out that the description of the land itself shows that it is bounded on the south by Red River, that a plat of the property showing its correct boundaries was recorded in Avoyelles Parish in 1898 when one of plaintiffs' ancestors in title acquired this 60-acre tract, and that this plat was available to defendants. The evidence shows that before the clearing operations were begun defendants had access to a Tobin map which gave the correct location of plaintiffs' land. And, when plaintiffs' land was cleared without authority, defendants also cleared an additional 100 acres of land belonging to other adjacent landowners, on which land defendants had no lease.
The trial judge found that "the preponderance of the evidence proves the bad faith of the defendants in their activities upon the lands of the plaintiffs." He obviously concluded that defendants were on moral bad faith, because he awarded plaintiffs the converted value of the timber, without allowance or deduction for costs or expenses. We think the evidence supports a conclusion that the trespass was reckless and willful, and thus that defendants were in moral bad faith.
Defendants contend, alternatively, that the trial judge erred in awarding plaintiffs the converted or manufactured value of the timber, because the timber which was cut was never used in making another article, and thus it never acquired a converted or manufactured value. We find no merit to that argument. When the timber was cut it was converted into marketable logs. The fact that defendants did not sell or use the logs, or that they did not manufacture other articles from them, does not relieve defendants of liability for the converted or market value of the logs after they had been severed from the land. We think the trial judge was correct in concluding that plaintiffs were entitled to recover the market or converted value of the logs, without allowance or deduction for costs or expenses.
Two experts testified as to the quantity and as to the value of the timber which had been cut from plaintiffs' property. The trial judge accepted the estimates of the expert called by defendants, and he concluded that the manufactured value of the timber cut and destroyed was $1813.00. We cannot say that he erred in accepting the opinions expressed by that expert, and in basing the award on the estimates made by him.
The trial judge also found that the landowners are entitled to recover the additional sum of $500.00 as damages for the trespass committed by defendants. Plaintiffs contend that this award is inadequate and should be increased. Applicable here, we think, is the rule that the trier of fact has much discretion in determining the amount which should be awarded for nonpecuniary damages. Daigle v. Gilmore, 116 So.2d 860 (La.App. 1st Cir. 1959).
We have considered the facts in this suit and the awards which have been made in other cases of this type, and have concluded that there has been no abuse of discretion by the trial judge in the award of damages for trespass here. See Bihm v. Hirsch, 193 So.2d 865 (La.App. 3d Cir. 1967); Braud v. Theriot, 170 So.2d 679 (La.App. 1st Cir. 1964); Loeblich v. Garnier, 113 So.2d 95 (La.App. 1st Cir. 1959).
Plaintiffs contend that the trial court erred in refusing to allow them to recover their proportionate part of the revenues received by defendants from the 1967 crop. *113 The trial judge based its refusal to make such an award on the fact that defendants became co-owners of the property before the 1967 crop was harvested, and that as such they had the right to use the property and they did not have to account to plaintiffs, as the other co-owners, for the revenues which they received from the crop. We think the trial judge erred in arriving at that conclusion.
A similar question was presented in Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (1955), where plaintiffs, as co-owners with defendant, sought to recover (1) a rental charge, based on defendant's occupancy of the jointly owned property, and (2) judgment for their proportionate part of the revenues which defendant received from the cultivation of cotton crops on the land. Our Supreme Court concluded that plaintiffs were not entitled to recover a rental charge based on defendant's mere occupancy of the land, but that they were entitled to recover a proportionate share of the value of the profits derived from the cotton crop which defendant raised on that property. The court said:
"In determining the amount due and recoverable by a co-owner out of possession from his co-owner in possession, a clear distinction should be drawn between the personal occupancy, use and enjoyment of property by the possessor and the rents and revenues derived by him therefrom, either from a lease or by his own industry or exploitation. As to the latter, he must account to his co-owner for all rents and revenues he has received because, in obtaining these fruits, he acts not only for himself but also as the agent of his co-owner for the latter's just proportion."
Our conclusion is that plaintiffs are entitled to recover a proportionate part of the revenues which defendants received from the 1967 crops. The trial judge determined that defendants were obliged to pay to the owners the sum of $10.00 per acre, or $245.00, for the portion of plaintiffs' land which was cultivated by them in 1966. Plaintiffs argue that a larger sum should be allowed for the year 1967, because production is always low during the first year after clearing operations are conducted. We find, however, that the evidence fails to show that a larger sum should be allowed as the landowners' portion of the revenues from the 1967 crops. We conclude, therefore, that defendants are accountable to the landowners for the total sum of $245.00 as revenues received by them from the use and cultivation of plaintiffs' 24.5-acre tract during the year 1967.
The trial judge correctly determined that plaintiffs are entitled to recover 19/22 of the total amounts which defendants are obliged to pay the landowners. According to our computations, the total amount for which defendants are accountable is $2803.00. Plaintiffs' proportionate share of that amount is $2420.77.
The trial court correctly rejected defendants' reconventional demand in which they seek to recover from plaintiffs the enhanced value of the land. The applicable rule is that a possessor in bad faith is not entitled to recover from the owner the costs of clearing operations or the costs of improvements which he places on the lands and which are inseparable from the soil. Voiers v. Atkins Bros., 113 La. 303, 36 So. 974 (1903); Juneau v. Laborde, supra; and Gibson v. Hutchins & Vaughan, 12 La.Ann. 545 (1857).
The rationale of this rule was set out by the Louisiana Supreme Court in Gibson v. Hutchins & Vaughan, supra, and repeated in Voiers v. Atkins Bros., supra, as follows:
"To place a real proprietor at the mercy of a possessor in bad faith, by requiring him to pay the latter, who has, without just authority, changed the face of the land for selfish purposes of his own, does not accord with those rules of law which give the dominion of the soil to the proprietor only, or to one who *114 has a right to consider himself a proprietor for the time. An intruder may recover such expenses as are necessary for the preserving of the thing. A negotiorum gestor may recover what he has spent in doing the business necessary to be done for another, even without a mandate. It is a general rule of equity that no one should enrich himself at another's expense. But this doctrine must not be stretched so far as to let an intermeddler recover for willfully doing what was not necessary to be done, or what the owner might not wish to have done, and what the law did not require to be done. If an intermeddler goes to expense with the single view of benefiting himself, and reaps the benefit, he cannot demand a reimbursement for his time and trouble from the person upon whose property he has intruded, by suggesting that he, too, has been incidentally benefited."
The evidence indicates, and the trial judge found, that the part of plaintiffs' property which has been cleared has a higher market value now than it had before these clearing operations were conducted. It, however, was not necessary to conduct these operations for the preservation of the land, the owners did not wish that the land be cleared, the law did not require that that be done, and the improvements were of such a nature that plaintiffs could not require their removal. Under those circumstances, defendants as trespassers in bad faith, are not entitled to the costs of the improvements or the enhanced value of the land.
For the reasons herein set out, the judgment appealed from is amended by increasing the amount of the award from $2209.18 to the sum of $2420.77. In all other respects, and as herein amended, the judgment is affirmed. The costs of this appeal are assessed to defendants-appellants.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.