PRICE, Judge.
This is an action to recover damages for an unlawful cutting of timber on property belonging to plaintiffs. Plaintiffs are the heirs of George B. and Maggie Guyton Boyett, who inherited a 110 acre tract of land in Winn Parish, bounded on the south by a 240 acre tract known as the F. M. Smith Estate and bounded on the north, east and west by lands of Urania Lumber Company.
On July 9, 1965, the L. L. Brewton Lumber Company, Inc. bought the merchantable timber on the F. M. Smith lands from the owners thereof. Brewton was represented in the transaction by its woods superintendent, E. E. Crooks. By agreement with Brewton, Crooks agreed to cut all of the hardwood timber suitable for saw logs for his own account at an agreed price of $10.00 per MBF, and to supervise the cutting of all the other timber. Logging operations were begun under the supervision of Crooks in July, 1965. In early September one of the plaintiffs, J. P. Boyett, discovered that the timber on the Boyett lands was being cut by the persons carrying on logging operations on the Smith tract. At this time a substantial portion of the timber on the Boyett tract had been removed.
Suit was brought by plaintiffs against L. L. Brewton Lumber Company, Inc., and E. E. Crooks, alleging that these defendants had committed a trespass on the land belonging to the plaintiffs by cutting and removing timber therefrom. Plaintiffs pray for judgment against the defendants, in solido, in the sum of $27,133.48. Of this amount $20,882.48 is alleged to be the manufactured value of the timber removed from the 110 acre tract of plaintiffs. The remaining $6,251.00 is claimed for the present cash value of the loss of future growth from a premature cutting of a *497 portion of the timber before it had reached the proper size for marketing at its highest value.
Although defendants in their answer admit the unlawful cutting of plaintiffs’ timber, they contend that their actions were in moral and legal good faith and that they should only be liable to plaintiffs for the stumpage value of the timber removed.
After a trial on the merits, the district court found the defendants were in legal bad faith and awarded judgment against defendants for the sum of $3,858.03, this being the delivered price of logs and pulpwood found by the court to have been cut, less the expense of cutting and handling.
Plaintiffs perfected this devolutive appeal from the portion of the judgment awarding damages, asserting that the trial court made the following errors:
1. In finding the defendants in legal bad faith as opposed to moral bad faith.
2. In accepting the estimates of defendants as to the amount of timber removed as opposed to the evidence presented by plaintiffs.
3. In denying any damages for loss of new growth caused by the unlawful cutting.
The issues to be resolved on this appeal relate solely to the amount of damages the plaintiffs are entitled to under the law, the defendants having admitted the wrongful cutting of the timber in their pleadings.
In the case of Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847 (1951), the Louisiana Supreme Court prescribed the method of assessing damages for the unlawful cutting of timber as follows:
“The measure of damages allowable for the unlawful cutting of timber is well settled in this State. If the trespass has been reckless and willful, the trespasser is said to be guilty of moral bad faith and is liable for the converted value of the timber without allowance or deduction for costs and expenses. In cases where the trespasser believes himself to be owner but should have known otherwise, either from information available to him or other ascertainable facts which would have placed a reasonably prudent man on notice, he is held to be in legal bad faith and the actual expenses incurred by him in converting the timber are to be deducted in assessing the damages. And in cases where the trespasser is in good faith, that is, where he believes that the timber belongs to him and there is no valid reason for him to suppose otherwise, he is liable only for its stumpage value. Bolles Wooden Ware Co. v. U. S., 106 U.S. 432, 1 S.Ct. 398, 27 L.Ed. 230; Guarantee Trust & Safe Deposit Co. v. E. C. Drew Inv. Co. et al. [107 La. 251, 31 So. 736], supra; St. Paul v. Louisiana Cypress Lumber Co., 116 La. 585, 40 So. 906; State v. F. B. Williams Cypress Co., 131 La. 62, 58 So. 1033 and State v. Jefferson Island Salt Mining Co., 183 La. 304, 163 So. 145 and authorities there cited.” [52 So.2d 847, 851]
The district judge in his written reasons for a judgment, found that the evidence in this case warranted a conclusion that the defendants were in legal bad faith in accordance with the definition set forth in the Kennedy case. He accepted and believed the testimony of the defendant, Crooks, who explained that he had made a gross mistake in getting onto the Boyett lands but denied that he had any wrongful intent. His only explanation was that he misread a tag marking one of the corners of the adjoining land of Urania Lumber Company and this must have caused the mistake.
The testimony disclosed that the Urania Lumber Company lands, which encircled both the Boyett and Smith lands on three sides, were well marked by yellow paint and with appropriate tags designating corners. Neither the Boyett nor Smith lands were fenced and the only testimony relative to a boundary being indicated between these lands described an old blaze *498 line made several years prior to this incident when another timber cutter accidentally cut over the line.
It is very difficult to understand how an experienced timber man such as defendant, Crooks, could have made such an error as was made in this case. However, the Supreme Court in the Kennedy case, supra, has ruled that to consider one in moral bad faith the trespass must not only be reckless but must be willful and wanton. The meaning usually attributable to the words willful and wanton require that the party acting willfully or wantonly possess an intent to perform the act with utter disregard for the rights of others. It is usually required that he be conscious of the wrongfulness of his act. We must profess that it is very difficult to evaluate the state of mind of an individual to determine his intent at some prior time. This is a classic example of the ideal situation for the applicability of the rule frequently quoted by the appellate courts of this State that the finding of fact made by the trial judge who had the opportunity to see, hear and personally evaluate the credibility of the witnesses, should not be disturbed unless he has committed manifest error.
Although we recognize the persuasiveness of the plaintiffs’ argument that the error committed here by Crooks should, on its face, be sufficient to classify him in moral bad faith, we cannot say that we can find manifest error in the finding of the trial judge that defendants should be classed as in legal bad faith under the guidelines of the Kennedy case which plaintiffs concede is applicable.
We next pass to the contention of the plaintiffs, that the trial judge committed error in accepting defendant’s evidence establishing the quantity of timber taken and rejecting the evidence of plaintiff on this question.
In this regard we are of the opinion that the trial judge has committed manifest error. The timber had all been removed from plaintiffs’ land at the time plaintiffs first discovered the trespass. The only possible means available to plaintiffs to ascertain their loss was to have an evaluation of a professional forester. They employed Peter T. Lannon, Jr., a graduate forester with over 30 years of experience in forest management. He previously worked for several large timber companies before establishing an independent forestry service in Farmerville, Louisiana. Mr. Lannon made a cruise of the 110 acre tract to determine as nearly as possible the quantity of timber removed by defendants. He testified that he selected 55 test plots, each one-fifth acre in size, throughout the 110 acre tract. These were laid out in advance to prorate one plot for every two acres, constituting a 10% cruise of the entire tract. The stumps in each plot were counted and measured and the results recorded on a chart.
By a scientific approach utilizing the position of the tree tops left, the measure of the stump, and other pertinent findings, the forester made an estimate of the total board feet of the pine and hardwood cut on the tract. Lannon testified that this is an accepted and recognized method by the forestry and timber industry of cruising a tract after cutting to determine the quantity removed. Plaintiffs also offered the testimony of Louis H. Boyd, a timber buyer, who declared that he had previously cruised or estimated the Boyett tract with the intent to purchase, and that it contained a much greater quantity of timber than contended by defendants.
The defendants offered in evidence a quantity of “mill run tickets” issued by the various mills or other purchasers of the timber, seeking to establish the exact amount of saw logs, cross-ties and pulpwood taken from the Boyett tract. They admitted that at the time of the cutting no designation was being made as to products being removed from the Boyett land as it was presumed they were working on Smith lands.
*499 It would necessarily lie within the power of defendants to only produce the number of tickets they desired to establish a desired result. There is no other corroborating evidence of the completeness or accuracy of these “mill run tickets” to prove quantity.
Plaintiffs’ evidence on the other hand comes from an independent witness who is a recognized expert and whose opinion is corroborated by other independent testimony.
The trial judge apparently interpreted the admission of the witness, Lannon, that it is difficult to estimate the quantity of timber cut after it has been removed from the tract, as rendering this evidence too speculative to be of any weight. Should this view be followed then any landowner would be at the mercy of a trespasser who had removed the timber prior to the discovery of the owner. The plaintiffs in this case have presented the best evidence obtainable under the circumstances which existed, and we are of the opinion it should be given more weight than the testimony and uncorroborated written evidence presented by the trespasser who caused the situation.
The plaintiffs’ claim for the loss of the value of the future growth of timber prematurely cut was properly denied by the trial court. In the case of Quatre Parish Co. v. Beauregard Parish School Board, 220 La. 592, 57 So.2d 197 (1952), the Louisiana Supreme Court held that damage to young timber resulting from a negligent cutting by a defendant who was held to be in legal bad faith, was too speculative to permit recovery. We believe this decision to be analogous to plaintiffs’ claim for loss of future growth and are, therefore, compelled to agree with the trial judge in his denial of this item of damage.
The evidence presented by Lannon reflected the following estimates of timber taken and the prevailing price being paid for each category at the delivery point in the Winn Parish area:
3,590 board feet of pine timber— Price — $50 per MBF $ 179.50
37,875 board feet of No. 1 Veneer grade gum Price — $65 per MBF 2,461.87
37,900 board feet of No. 2 Grade gum Price $45 per MBF 1,705.50
37,875 board feet of cheaper grade gum Price $35 per MBF 1,325.65
83,210 board feet of Oak timber Price $45 per MBF 3,744.45
27,830 board feet of other hardwood Price $35 per MBF 974.05
192 cords of Hardwood pulpwood Price $10.50 per cord 2,016.00
Total value of timber removed $12,407.02
The evidence is conflicting on the cost of cutting and hauling of saw logs in the Winn Parish area. However, we believe the figure of $18.00 per MBF would represent a fair average of the testimony. There were 228,280 board feet of timber cut and removed according to the estimate we have accepted. The cost of cutting and hauling would, therefore, be $4,109.04. The cost of removing pulpwood and delivering to the mill was estimated to be $8.50 per cord. Total cost of cutting and hauling pulpwood would be $1,631.00. The total cost of removal and hauling of all products would, therefore, amount to $5,-740.04. The trespasser in legal bad faith is liable for the total converted value less costs of conversion. Quatre Parish Co. v. Beauregard Parish School Board, et al., supra. The total value of timber removed of $12,407.02 less the conversion cost of $5,740.04 equals $6,666.98.
Thus the judgment appealed is amended by increasing the plaintiff’s award against the defendants to the sum of $6,666.98, and as amended, it is affirmed. Defendants are assessed with the cost of this appeal.
Amended and affirmed.