BOLIN, Judge.
Plaintiffs, alleging themselves to be the co-owners of 80 acres of land in Union Parish, Louisiana, sued Dewey Riley and Spearsville Timber Company, Inc., for. damages for allegedly wrongfully cutting *913 and removing timber from the land owned by plaintiffs. Defendants filed an answer, an exception of no cause and no right of action, and a plea of prescription of one year. The exception and the plea of prescription were referred to the merits and following trial the district judge for written reasons overruled the exceptions; found defendants had cut and removed a stipulated amount of merchantable timber from plaintiffs’ land; and further found defendants ,were in legal bad faith, entitling plaintiffs to recover $1177.09, the manufactured value of the timber less the expenses of cutting and hauling. From judgment rendered pursuant to the written opinion, plaintiffs appeal, contending defendants were in moral bad faith entitling plaintiffs to recover the manufactured value of the timber. Defendants answer the appeal, contending the judgment against Spearsville was erroneous; that Dewey Riley acted in good faith and should be cast only for $327.89, representing the stumpage value of the timber; and reurg-ing the exception of no right of action. We affirm the judgment of the lower court.
ISSUES
(1) Was the exception of no right of action properly overruled ?
(2) Were the actions of Dewey Riley in cutting plaintiffs’ timber done in good faith, legal bad faith, or moral bad faith?
(3) Is Spearsville liable in solido for any damages assessed against Riley ?
Discussing the issues in the order stated, we direct our attention to defendants’ exception of no right of action, which is based on two grounds. First, it is alleged that subsequent to the filing of the suit on August 3, 1972, one of the plaintiffs, Mrs. Rosa Terral, died and her heirs had not been substituted as parties plaintiff. Next, defendants contend plaintiffs had conveyed the 80 acres of land to a corporation on December 8, 1972, and, as a result, have no further right or interest in this litigation. We find the trial judge correctly overruled this exception. Article 801 of the Louisiana Code of Civil Procedure provides:
“When a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself substituted for the deceased party, on ex parte written motion supported by proof of his quality. * * * ”
Pursuant to the provisions of the above article, the heirs of Rosa C. Terral were properly substituted as parties plaintiff by an order dated June 22, 1973, and the alleged defect was remedied.. We find the statutes, cited by defendants, prohibiting delivery of possession of property belonging to deceased to the heirs in certain specified cases, are inapplicable and have effected no change in the procedure under Louisiana Code of Civil Procedure, Article 801. See Austrum v. City of Baton Rouge, 282 So.2d 434, 438 (La.1973).
Under the exception of no right of action defendants additionally claim plaintiffs had conveyed their property to a corporation, thus destroying their right of action for damage to the timber. We find no basis for this contention. Louisiana Revised Statutes 9:1103 provides:
“Standing timber shall remain in immovable, and be subject to all the laws relative to immovables, even when separated in ownership from the land on which it stands.”
This being an action for damages for the tortious conversion of immovable property, allegedly owned by plaintiffs at the time of the tort and at the time suit was filed, the subsequent sale of the land upon which the timber had been growing did not transfer this claim unless it was included in the act of sale.
The second and third issues are so closely related they will be discussed together. In order to better understand these questions a brief statement of the background and facts of the case is necessary.
*914 The Terral land is bounded on the east and south by property belonging to Percy Wade. Wade sold the pine timber on his tract to the Georgia-Pacific Company. After Georgia-Pacific employees had cut and removed that timber, Wade hired Riley to cut and remove the pine treetops suitable for pulpwood. Riley then negotiated with Wade to purchase the hardwood timber located on Wade’s property near plaintiffs’ property in an area known and referred to as Bear Branch Bottom. Wade knew Riley was a wood producer for Spearsville and that Spearsville would withhold and pay to Wade the stumpage value of any hardwood timber cut. Riley cut the timber which was purchased by Spearsville and Wade received $3.00 per cord for the hardwood cut and hauled.
Bear Branch Bottom runs generally east and west across the southern portion of the Wade and Terral properties, and is six or seven hundred feet wide as it traverses the Terral property. Prior to the trespass there was an established stand of hardwood timber growing in this creek bottom on the Terral tract and it appears undisputed the trespass took place in this area.
All witnesses except Riley testified the common boundary between the Terral property on the west and the Wade property on the east consisted of an old fence with the remnants of the wire being up in places and down in others. Bill Halley, president of Spearsville, testified he had cruised the Wade property a few months before the trespass and had noticed evidence of a barbed wire fence at every point at which he made contact with the boundary line. However, he did not inspect this boundary line entirely through the creek bottom area but assumed the old fence line continued in that area. In addition to the old fence the east boundary of the Terral tract was marked by a clearing or firelane approximately 20 feet wide. This firelane was not kept clean at all times but Halley admitted having seen it when he cruised the Wade timber a few months before the trespass.
After Riley had salvaged the pine tops from the Wade property and before proceeding to cut the hardwood, Riley talked to Halley. Halley testified he took Riley to an old hay barn located on the Wade place approximately 400 yards east of the east boundary line of the Terral property. Halley testified he instructed Riley to cut only in the creek bottom about three or four hundred yards to a fence which would be the “line”. He stated he pointed in the direction of the bottom but did not tell Riley that a dilapidated fence constituted he boundary; neither did he say it was going to be a four-strand barbed wire fence with creosote posts.
Riley testified he relied entirely upon Halley’s verbal instructions. He never requested anyone to go with him and point out the boundary nor did he secure a map of the area to aid in locating the boundary line. When he began cutting the hardwood he went about a half mile into the creek bottom rather than the quarter of a mile described and instructed by Halley. It is undisputed he cut timber for a distance of about a quarter of a mile into Terral property. Riley’s only excuse was that he was expecting to find a standing four-strahd barbed wire fence which he never found, so he just kept cutting hardwood.
Based upon the testimony outlined above, as well as that of other witnesses, the trial judge found Riley to have been in legal bad faith in trespassing on plaintiffs’ property and cutting and removing the hardwood therefrom. As pointed out in the written opinion of the trial judge, the law applicable to cases of this kind is summarized in Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847 (1951), as follows :
“ . . .If the trespass has been reckless and willful, the trespasser is said to be guilty of moral bad faith and is liable for the converted value of the timber without allowance or deduction for costs and expenses. In cases where the tres *915 passer believes himself to be owner, but should have known otherwise, either from information available to him or other ascertainable facts which would have placed a reasonably prudent man on notice, he is held to be in legal bad faith and the actual expenses incurred by him in converting the timber are to be deducted in assessing the damages. And in cases where the trespasser is in good faith, that is, where he believes that the timber belongs to him and there is no valid reason for him to suppose otherwise, he is liable only for its stumpage value. . . . ”
Based principally upon the law as enunciated in Kennedy, the trial judge found Riley was in legal bad faith “because there were ascertainable facts which should have placed a reasonably prudent man on notice that he was trespassing. First, Riley should have requested either the landowner or Halley to shorn him the boundary fence. Then, it was established that Riley went about twice as far in his cutting as Halley instructed. Also, despite the fact that the cutting took place in a branch bottom, there was evidence of the existence of an old fence in this area and of a fire lane.”
The lower court, further relying on Kennedy, assessed the 'same liability against Spearsville as against Riley. On appeal Spearsville correctly points out that the Kennedy case is different from this case in that in Kennedy the court found the trespasser to be in moral bad faith instead of legal bad faith. However, we find the same rule applies whether the trespasser be in legal or moral bad faith, since in either event he is guilty of a tor-tious conversion of the timber belonging to another. Under these circumstances a purchaser such as Spearsville, acting through its agent and superintendent Halley, stands in the shoes of the trespasser, whether the purchaser be in good or bad faith, and is liable in solido for the converted value of the timber less costs of production. See Kennedy, supra; also see Bolles Wooden Ware Co. v. United States, 106 U.S. 432, 1 S.Ct. 398, 27 L.Ed. 230.
From our review of the record we find the trial judge was eminently correct in his findings of fact and the application of the appropriate law to these facts. Accordingly, the judgment of the lower court is affirmed at appellants’ cost.