412 So.2d 677 (1982)
Eskridge E. SMITH, Jr., and Thomas Lee Smith, Plaintiffs-Appellees,
v.
Harold MYRICK, et al., Defendants-Appellants.
No. 14790.
Court of Appeal of Louisiana, Second Circuit.
March 2, 1982.
Campbell, Campbell & Johnson by John T. Campbell, Minden, for defendants-appellants.
Kitchens, Benton & Kitchens by Paul Kitchens, Minden, for plaintiffs-appellees.
Before HALL, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
Defendant, Harold Myrick appeals a trial court judgment awarding treble damages under LSA-R.S. 56:1478.1[1] to plaintiffs, Eskridge E. Smith, Sr., and Thomas L. Smith for the cutting, without permission, of timber located on plaintiffs' property.
*678 Plaintiffs and defendant are adjacent landowners in Bienville Parish. Plaintiffs own 40 acres and defendant, Myrick's family, owns 180 acres. In 1977 C. W. Nash, a pulpwood cutter, approached defendant's mother, Mrs. Dare, who lived on the Myrick family property and inquired of her regarding the possibility of his cutting timber from her children's property.
Mrs. Dare agreed subject to her son, Harold's approval. Nash returned early the next morning to obtain that approval for the cutting. Myrick instructed Nash to cut timber only from within the fences enclosing the Myrick property. Mr. Myrick did not actually show Nash where each fence was located but rather generally instructed Nash not to cross any fences and to cut where he had cut before, referring to Nash's prior operations on the property five years before. Neither Myrick nor any of his family checked on Nash's progress.
Nash completed his operation sometime prior to November 1977. During that month it was discovered that Nash had cut timber from plaintiffs' adjoining property, which plaintiffs had not authorized. Nash stated that he cut timber only from property he believed to belong to the Myrick family.
The Myrick-Smith boundary line is demarcated by a 35 year old fence which exists in various stages of deterioration and disrepair. Nash claimed that although told not to cross any fences, he assumed that the fence was only a ruin of an abandoned fence and not the actual boundary line.
Myrick claims that upon discovery of the mistake, he offered to pay plaintiffs the amount of stumpage he received for the timber cut from their property. The plaintiffs admitted that Myrick made such an offer through his attorney but that they declined.
The trial court found that Nash did cut the timber from the Smiths' property and that his timber cutting operation had been authorized by Myrick, but that Nash's conduct was reasonable. In written reasons for judgment the trial court stated:
The Court is of the opinion that Nash certainly thought he was cutting on Myrick property when he was in fact on the Smith's forty acres. The Court believes it reasonable that Nash, when looking for a boundary would expect to find a fence which would hold stock (see testimony of Myrick that there had, at least shortly before, stock in the pasture) and the old dilapidated fence he crossed certainly would not have held stock, nor was there any evidence at a gap in the fence that it could be closed to prevent stock from moving from the Myrick property to the Smiths'.
The fact that the fences giving entrance to the Myrick property were in good condition, and that there were even cross fences within the Myrick property (see testimony of Nash) convinced the Court that anyone with the instructions given by Myrick would not have considered the old deteriorated fence to be a property line. The Court, therefore, finds that Nash is only liable for the fair market value of the timber.
The trial court found Myrick "lax in not showing Nash his property lines", but also held that neither Nash or Myrick acted in bad faith.
The trial court also found that there was no real dispute as to the amount of timber taken but dispute did exist as to the value of the timber taken. The court found the defendant's expert to be more familiar with *679 the value of timber in that area, and therefore assessed the total value of the timber cut at $866.35, both for pulpwood and saw timber sold as pulpwood.
Myrick and Nash were found liable in solido for this $866.35. A judgment of an additional $1,632.70, ($866.35 X 3 less $866.35) was rendered against Myrick. Thus the plaintiffs were awarded treble damages, both defendants being liable in solido for one-third and Myrick alone being liable for two-thirds. Court costs were assessed one-third to Nash and two-thirds to Myrick.
Myrick alone now appeals, which appeal was not answered by the plaintiffs. In so doing, Myrick contends Nash was an independent contractor or purchaser of the timber and that the responsibility for exceeding the boundary lines is solely his. Thus Myrick's position is that he only owes the plaintiffs $340.14, representing the sum he contends he received for timber cut on plaintiffs' land.
Finding no reasons to disturb the trial court's determination that Nash and Myrick were both in good faith we are only concerned with the applicability of subsection C of LSA-R.S. 56:1478.1 to the landowner Myrick. Though Nash is not involved in this appeal we should note that a woodcutter who crosses a dilapidated boundary, as existed in this case, is not liable for treble damages. Shaffett v. Vicks, 385 So.2d 419 (La.App. 1st Cir. 1980). The sole issue is whether the landowner Myrick is responsible under the statute for Nash's crossing of this dilapidated boundary. The statute is punitive in nature and treble damages are to be assessed only where a party is clearly in violation thereof. Garrett v. Martin Timber Co., 391 So.2d 928 (La.App. 2nd Cir. 1980).
For the reasons set out herein we reverse the trial court's award of treble damages against Myrick finding Myrick only liable for $350.35, representing the amount of stumpage he received for timber cut on plaintiffs' land.
The trial court in assessing the damages plaintiffs suffered accepted the defendant's expert's estimate of the value of the pulpwood at the time in question, which was $6.50 per cord. The court found that the plaintiffs had lost 42.2 cords for a total of $275.60. Additionally, the court found that plaintiffs lost $590.75 of saw timber, saw timber being more valuable than pulpwood. Of course, none of the saw timber Nash took from plaintiffs' property was sold as such. It was all converted to pulpwood. The defendant's expert testified that 1,000 feet of saw timber equaled approximately three and one-third cords of pulpwood. Plaintiffs' expert testified that 3,475 board feet of saw timber from 55 trees was lost. This converts to approximately 11.5 cords at $6.50 per cord equaling $74.75, which when added to the $275.60 equals $350.35.
In our view, the statute in question is basically directed to the woodcutter. Where there is doubt, we believe that it is basically his responsibility to be certain that he is cutting on the proper premises. Of course, this responsibility is mitigated by the provisions of subsection C of the statute indicating that treble damages do not apply where the boundaries are not clearly delineated, as here, and also where the area cut is included in a contract with the purported owner. For liability to attach to the landowner under the statute in question, he must "... authorize or direct his agent or employee to cut...." Nash was obviously not the employee of Myrick, nor was he Myrick's agent.
Nash approached Myrick's mother for authority, when he was in the area on other woodcutting business. Having cut on the Myrick property some five years previously, he noticed that there was additional timber now appropriate for harvesting. He received tentative permission from the defendant's mother who indicated he would have to check with the defendant. Permission was given early the next morning when Nash arrived on the premises. After receiving the instructions noted earlier, Nash proceeded with his cutting business unsupervised and unaided by Myrick. Under these circumstances, we view Nash as an independent contractor or purchaser of *680 the timber, and not the agent of the landowner. See Ainsworth v. International Paper Company, 311 So.2d 629 (La.App. 3rd Cir. 1975).
We are mindful of Terral v. Riley, 293 So.2d 912 (La.App. 2nd Cir. 1974), cited by plaintiffs for the proposition that one who gives lax instructions stands in the shoes of the woodcutter to whom he gave those instructions. It should be noted that the instructions given in that case were by the wood producer, (rather than the landowner) with whom the woodcutter obviously had a strong and regular working relationship and whose agent the woodcutter may well have been. In any event Terral is prior to the effective date of the act establishing the statute in question.[2]
Accordingly, the judgment of the District Court is amended to reduce the judgment in favor of plaintiffs against the defendant Myrick to the sum of $350.35, which judgment is in solido with the judgment against C. W. Nash to that extent. All costs of this appeal are assessed against the plaintiffs. The costs of the trial court assessed to Myrick (two-thirds of the total) are assessed one-half to the defendant Harold Myrick and one-half to the plaintiffs.
NOTES
[1] LSA-R.S. 56:1478.1 Trees, cutting without consent; penalty:

A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed, except however, that the provisions of this section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and that no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner.
D. The provisions of this section shall not apply to the clearing and maintenance of rights of way or to utility service situations where a utility is acting in good faith to minimize the damage or harm occasioned by an act of God; the provisions of this Act shall not apply to land surveying by or under the direction of a registered professional land surveyor, duly registered under the laws of the state of Louisiana.
E. Whoever violates the provisions of Subsection A as they relate to the cutting of standing cypress trees on water bottoms owned by the state of Louisiana shall, in addition to the penalties otherwise provided in this Section, be subject to a fine not to exceed $5,000, imprisonment not to exceed six months, or both.
[2] Act No. 692 of 1974.