430 So.2d 1332 (1983)
Ivan FISK, William Arthur Fisk and Marge Fisk Monro, Plaintiffs-Appellants,
v.
Woodrow W. CHAMBLEE, Defendant-Appellee.
No. 82-615.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1983.
Rehearing Denied May 26, 1983.
*1333 McHale, Bufkin & Dees, Michael K. Dees, Lake Charles, Jones, Jones & Alexander by Glenn W. Alexander, Cameron, for plaintiffs-appellants.
Don McKnight, Lakes Charles, for defendant-appellee.
Before FORET, CUTRER and STOKER, JJ.
CUTRER, Judge.
The plaintiff property owners appeal from a trial court judgment dismissing their suit for damages resulting from a trespass allegedly committed by Woodrow W. Chamblee. Ivan Fisk, William Arthur Fisk and Marge Fisk Monro (the Fisks) sued Woodrow W. Chamblee (Chamblee) for damages they allegedly sustained when Chamblee cleared some lots owned by the Fisks in the Ocean View Subdivision in Cameron Parish, Louisiana. A jury found the Fisks suffered no damages as a result of Chamblee's actions. Judgment was rendered in accordance with the jury's findings and the Fisks appealed. We reverse and render.
The Ocean View Subdivision was platted, recorded and the streets therein dedicated in 1923. The Fisks inherited certain lots in the subdivision from their father. Chamblee bought more than 100 lots in the subdivision from the Fisks' aunt (a sister of the Fisks' father) in 1977. Intermingled in the area purchased by Chamblee was 25 lots owned by the Fisks. All the lots were small, measuring 50 feet wide by 100 feet deep. (See sketch attached.) Although dedicated in 1923, the streets of the subdivision had never been cleared or improved before 1977.
In late 1977, Chamblee undertook to clear his lots in the Ocean View Subdivision. He contacted the Cameron Parish Police Jury and told them that he was going to clear the previously dedicated streets. Chamblee requested that the Parish have equipment and an operator available to construct and begin maintenance of the dedicated parish streets. The Police Jury complied with Chamblee's request; on the day the property was cleared a parish employee constructed road beds within the dedicated and surveyed rights-of-way as clearing proceeded.
*1334 Chamblee was aware he was not the owner of all of the lots in the southwestern portion of the subdivision. He, nonetheless, instructed the bulldozer operator to clear all of the lots in the area. The bulldozer operator was instructed to clear off underbrush, vines, briar bushes and to avoid destroying any oak trees.
The Fisks sued for damages as a result of the loss of trees and shrubbery; devaluation of adjacent property on which debris was piled or, alternatively, the cost of restoration of the surrounding property; humiliation, grief, aggravation and worry resulting from the loss of trees and shrubbery and for punitive damages.
Chamblee denied the Fisks' allegations and reconvened against the Fisks for recovery of the amounts he expended in enhancing the value of the Fisks' property.
Chamblee did not deny the trespass but felt that he was doing the Fisks a favor by clearing the undergrowth from their lots as he cleared his lots and the streets. The trespass not being disputed, the trial judge instructed the jury that they need not decide if a trespass had occurred. Rather, the first question given to the jury was whether the Fisks had suffered any damages as a result of Chamblee's trespass. The jury found the Fisks had suffered no damage. The jury, as instructed, did not consider questions concerning the amount of damage suffered by the Fisks or the amount of any offsets due Chamblee.
On appeal the Fisks raise five issues:
(1) The jury was clearly wrong in finding the Fisks suffered no damage as a result of Chamblee's trespass;
(2) The trial court gave erroneous jury instruction regarding the amount of offset due Chamblee for any enhancement his trespass may have created in favor of the Fisks;
(3) The trial court erred by not instructing the jury regarding damages under LSA-R.S. 56:1478.1 and by not adequately defining "bad faith" and "good faith" under the statute;
(4) The trial court erred in refusing to allow the Fisks to prove Chamblee's ability to pay; and
(5) The trial court erred in not allowing the Fisks to amend their petition at trial to include the description of lots omitted from their original petition.
The Fisks contend that, when Chamblee cleared their lots, he destroyed trees located upon the lots thereby causing a devaluation of the lots and damages. The first issue for determination is whether the Fisks have proven that trees were removed from their three acres of lots by Chamblee. If the record reflects that only the underbrush was cleared which had no value, the jury would have been justified in concluding that the Fisks had not been damaged.
We note that this situation involved a sizeable subdivision, with dedicated streets and the various blocks being divided into small 50 ft. by 100 ft. lots. The Fisks had inherited their property from their ancestor in subdivision form. They were well aware of the status. They had, at an earlier time, attempted to set aside the dedication of the streets but were unsuccessful.
When Chamblee purchased the property he wanted to clear and construct the streets as dedicated to the parish. As the lots were covered with thick underbrush, briars, vines, bushes and some oak trees, he wanted to clear the lots of all the growth except the oak trees. These oak trees were not large oaks but measured only about 5 in. to 6 in. in diameter. The remainder of the growth was removed and pushed into windrows.
Chamblee was contacted by some other lot owners, including Oliver Stockwell from Lake Charles, and was asked to clear their lots. Stockwell paid Chamblee for the clearing of his lots. Chamblee cleared the lots as requested. He did not contact the Fisks, but stated that he felt that he would do them a favor and clear their three acres of lots as he had done for the other owners. He stated that he supervised the clearing and instructed the bulldozer operator, as the work progressed, not to remove any of the small oak trees. Chamblee stated that the remainder was just undergrowth composed of bushes and undergrowth which was of no value.
*1335 On the day that the clearing took place, the parish of Cameron had sent its grader operator, Ramie Boudreaux, to the site to grade the streets and cut the respective ditches as the clearing took place.
Boudreaux was a life-long native of the area. He lived near the subdivision. He stated that he was there during the time that the bulldozer operator was working. He was well acquainted with the lots before the clearing operation began. He stated that Chamblee only cleared the underbrush which included some thorny mesquite bushes or trees and some "strawberry"[1] trees which were small and of no substance. He stated that this area did not contain many oak trees but the few which were there were left standing, including those on the Fisks' three acres. Upon completion of the clearing, two of the streets were graded and covered with blacktop and one was improved with shell. The undergrowth was pushed up in windrows to the west of the Chamblee property.
Boudreaux's testimony was corroborated by Mr. Berwick, a Police Juror of Cameron Parish who lived in the area, and Alleen Fisk Evans, Chamblee's vendor.
The Fisks insist that their property contained trees that were destroyed. They testified that, generally, the property contained trees that had been removed. They were unable to state the number of trees nor whether they were located on their three acres, on the street rights-of-way or on Chamblee's lots. Their testimony lacked clarity and was speculative as to the existence of trees on their three acres.
The jury was faced with a conflict of testimony as to whether the clearing by Chamblee included the removal of any trees from the Fisks' three acres. The jury apparently chose to give more weight to the testimony of Chamblee and his witnesses than to the testimony of the Fisks and their witnesses.
The jury has the duty of determining what facts have been proved and what facts have not been proved. They must determine the weight that they shall attach to the testimony of the various witnesses who testified. They were so instructed in this case. The jury made a determination that the Fisks were not damaged by the removal of trees in Chamblee's clearing operations.
Our review of a jury verdict is limited to a determination of whether, after considering the evidence, the jury was clearly wrong. Soileau v. South Cent. Bell Tel. Co., 406 So.2d 182 (La.1981).
Our review of the record fully supports a finding that the Fisks were not damaged by the removal of trees from their lots.
The Fisks also ask for damages for mental anguish as the result of the trespass.
In the case of McGee v. Seco Timber Co., 350 So.2d 1265 (La.App. 3rd Cir.1977), this court stated as follows:

"Our review of the applicable jurisprudence indicates that under certain circumstances, landowners may recover damages for mental anguish and trespass done to their property. The cases allowing such recovery involve situations where the defendant trespassers were found to be in moral bad faith or to have committed a willful and wanton trespass on plaintiffs' property. Knoll v. Delta Development Company, 218 So.2d 109 (La.App. 3rd Cir.1969, writ refused); Campbell v. Gray, 294 So.2d 841 (La.App. 2nd Cir.1974); Turner v. Southern Excavation, Inc., 322 So.2d 326 (La.App. 2nd Cir.1975); and Dickerson v. R.J.M. Pipeliners, Inc., et al, 331 So.2d 501 (La.App. 2nd Cir.1976). We find, as the trial judge apparently did, that defendant, SECO, was not in moral bad faith. In order to hold the defendant in moral bad faith, it would have been necessary to find that the defendant had consciously performed some wrongful act in cutting timber on plaintiffs' lands....."

*1336 In the case at hand the jury charges included the concepts set forth above as to moral bad faith.
A review of the record reflects that the jury had ample evidence before it to conclude that Chamblee was not in moral bad faith in clearing the Fisks' lots. Chamblee stated he thought he was doing the Fisks a favor by clearing their lots as he had cleared the lots of other neighbors who had requested him to do so.
The jury, having before it evidence that Chamblee was not in moral bad faith, was justified in denying the Fisks any damages for mental anguish due to the trespass. We find that the jury was not clearly wrong in this respect.
There is one item of damage, however, that was incurred by the Fisks and should have been allowed. We are not sure that this item was stressed during the trial or that the jury even considered it. The testimony was principally centered around the questions we have heretofore discussed. The damage of which we speak is the damage caused by the debris being pushed upon adjacent lots owned by the Fisks. The testimony indicates that the debris was pushed upon and occupied a portion of approximately nine lots. The testimony states that it would cost $1,200.00 per acre to clean up this debris. We conclude that the jury erred in not making an award for this damage and the judgment will be reversed and this award will be rendered.
The Fisks are entitled to an award of $1,350.00 for this damage. The debris location involves nine lots. Since eight lots are derived from an acre, the calculation of this damage would be $1,200.00 × 1 1/8 = $1,350.00.[2]
The Fisks next contend that the jury was misled by the jury instructions. We have examined the jury instructions and determine that they were adequate and correct principles of law to be applied to this case. This issue lacks merit.
Due to the conclusions previously reached, it is not necessary that we discuss the remaining issues presented.
For the reasons assigned, the judgment of the trial court is reversed and set aside. It is ordered that judgment shall be rendered in favor of the Fisks and against Chamblee for the sum of $1,350.00 plus legal interest from the date of judicial demand until paid.
It is further ordered that the expert witness fees for the following persons be fixed at $100.00 each and shall be taxed as costs, to-wit:
 Steven Duplantis
 James Lisenby
 Richard Pease
 Danny Plauche
 Charlie McCain
Woodrow W. Chamblee, defendant-appellee, is to pay the costs of the trial court and this appeal.
REVERSED AND RENDERED.
NOTES
[1] Boudreaux referred to hackberry trees as "strawberry" trees. Apparently these are small, bush-like trees.
[2] These damages for the removal of debris are not damages as contemplated by the treble damage act, LSA-R.S. 56:1478.1.