KING, Judge.
The issues presented by this appeal are (1) whether the jury committed manifest error in finding that the plaintiff failed to prove by a preponderance of the evidence that he suffered an injury caused by the negligence of the defendant or by a defect on the premises belonging to the defendant, and (2) whether the matter should be remanded to the trial court for the presentation of additional evidence so as to prevent a miscarriage of justice.
Raymond Morvant (hereinafter plaintiff), was an employee of South Central Bell Telephone Company (hereinafter South Central Bell), installing telephone lines for Kent Langlinais, d/b/a Kent’s Nursery (hereinafter Kent’s Nursery), in the building owned by him. Plaintiff allegedly stepped through a hole in the attic of the building injuring himself. Plaintiff sued to recover damages from the defendants, Kent's Nursery and his insurers, Casualty Reciprocal Exchange Insurance Company (hereinafter Casualty Reciprocal Exchange) and Interstate Fire & Casualty Insurance Company (hereinafter Interstate Fire). South Central Bell intervened to recover medical expenses and workmen’s compensation benefits it had paid to plaintiff. After a trial before a jury the plaintiff’s claims were rejected. The plaintiff, Raymond Morvant, and the intervenor, South Central Bell, timely appeal. We affirm.
FACTS
Suit was filed by plaintiff on May 23, 1980 against Kent’s Nursery. This claim arose out of an alleged accident which occurred on November 30, 1979 while the plaintiff, a PBX Installer-Repairman employed by South Central Bell, was on the premises of Kent’s Nursery located at Route 1 Box 183, Youngsville, Louisiana. The plaintiff claims that while installing a part of a telephone system on the second (attic) floor of the greenhouse he stepped into a hole, with his right leg going through the hole, that was covered by newspaper causing him substantial injury.
The hole into which the plaintiff claims to have stepped was a peat moss chute which is part of a mobile hopper and track/trough. The peat moss chute hole plaintiff stepped through is one of several that are located within the sheet metal trough. All of the peat moss chutes, except the one that was in use at the time, were covered with sections of newspaper in order to prevent heat loss from the greenhouse below.
*451 The plaintiff claims that the proximate cause of the alleged accident was the negligence of the defendant in failing to maintain or repair his building and its appurtenances so as to avoid the creation of an undue risk of injury to others as well as permitting the building to become defective.
Subsequent to the filing of plaintiffs original petition, supplemental and amending petitions were filed. Casualty Reciprocal Exchange and Interstate Fire were named additional defendants as insurers of Kent’s Nursery, on the theory of joint, several and solidary liability with the insured, and Kent Langlinais, d/b/a/ Kent’s Nursery was named as the proper defendant. The plaintiffs employer, South Central Bell, also intervened seeking recovery of medical expenses and workmen’s compensation benefits which it had paid to plaintiff.
A trial by jury commenced on January 24, 1984 and concluded on February 2, 1984. The jury responded to the special verdicts as follows:
“1. Did Raymond Morvant prove by a preponderance of the evidence that he suffered an injury which was caused by the negligence of Kent Langlinais?
(ANSWER YES OR NO) NO
2. Did Raymond Morvant prove by a preponderance of the evidence that he suffered an injury which was caused by a defect on the premises of Kent’s Nursery?
(ANSWER YES OR NO) NO
3. If your answer is ‘NO’ to both questions, proceed no further. Have your foreperson sign and date the form.”
Eleven of the twelve jurors concurred in the verdict. The verdict of the jury was made the judgment of the court and a formal judgment was signed on February 14, 1984. The plaintiff devolutively appeals alleging the following assignments of error:
(1)The special verdict finding plaintiff failed to prove by a preponderance of the evidence that he suffered an injury caused by the negligence of Kent’s Nursery is manifestly erroneous and contrary to law and evidence presented in this matter, and
(2) The special verdict finding plaintiff failed to prove by a preponderance of the evidence that he suffered an injury caused by a defect on the premises of Kent’s Nursery is manifestly erroneous and contrary to the law and evidence presented in this matter, and
(3) The special verdict absolving Kent’s Nursery of negligence and strict liability is manifestly erroneous and contrary to the law and evidence presented in this matter and the matter should be remanded to the trial court for the presentation of additional evidence to prevent a miscarriage of justice.
STANDARD OF REVIEW OF JURY’S FINDINGS
Our law is well settled that where there is evidence before the trier of fact which, upon its evaluation of credibility, furnishes a reasonable factual basis for the trier of fact’s determination, this finding of fact should not be disturbed on review by the appellate court unless it is clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973); Campbell v. Tidwell, 407 So.2d 1359 at page 1362 (La.App. 3rd Cir.1981). When faced with testimony that is conflicting, the jury has the duty of determining what facts have been proved and what facts have not been proved. The jury must determine the weight that they shall attach to the testimony of the various witnesses who testified. Fisk v. Chamblee, 430 So.2d 1332 (La.App. 3rd Cir.1983), writ den., 439 So.2d 1076 (La.1983). The jury’s evaluation of credibility and inferences of fact should not be disturbed even though the appellate court may differ with the jury’s conclusions. Gibson v. Winn Dixie Louisiana, Inc., 426 So.2d 731 (La.App. 3rd Cir.1983).
*452 ASSIGNMENT OF ERROR NUMBER 1
In their first assignment of error, the plaintiff and South Central Bell maintain that the special verdict finding that he failed to prove by a preponderance of the evidence that he suffered an injury caused by the negligence of Kent’s Nursery is manifestly erroneous and contrary to law and evidence presented in the matter.
LSA-C.C. Art. 2315 provides in pertinent part that “[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” Under this theory of tort, the plaintiff bears the burden of proving by a preponderance of the evidence that he suffered an injury as a result of an accident caused by the negligence of the defendant. Careful review of the record in this case reveals that there was sufficient evidence before the trier of fact to provide a reasonable factual basis for the jury’s finding that the plaintiff did not meet his burden of proof.
Since the accident, if it did occur, would have been an unwitnessed event, the jury had only the plaintiff to rely upon to determine the facts of the accident. Thus the plaintiff’s credibility was an important factor in the jury’s evaluation of his testimony. The record reflects that there was an abundance of evidence that tended to cast doubt on the plaintiff’s credibility and his account of the facts.
The plaintiff claims that he was unaware of the presence of the peat moss chute holes and that he had never been warned of their existence by anyone connected with. Kent’s Nursery. He also claims that the only available means of reaching the place where he was to install the telephone system was to cross over the metal trough containing the newspaper-covered peat moss chute holes. However, there was testimony at the trial that conflicted with the plaintiff’s assertions. It is undisputed that the second floor of the greenhouse was well-lighted. Mr. Obey, a maintenance man for the nursery, unequivocally testified that he warned the plaintiff about the holes prior to the time of the alleged accident as he and the plaintiff were moving bags of styrofoam in order to clear a path for the plaintiff to use to reach the place where the telephone system was to be installed. The path was made so that the plaintiff would not have to cross or step into the metal trough containing the peat moss chute holes. Mr. Ferguson, the plaintiff’s supervisor, also testified that it was not company policy for installers to step on the equipment of customers and that telephone company employees were discouraged from such practices. The plaintiff, himself, could not testify that the styro-foam bags prevented him from having easy access without having to cross the metal trough. In fact, a diagram in evidence, drawn by the plaintiff, depicts that there was a clear pathway available to the plaintiff. Ms. Guillot, who worked in the office of the nursery, also testified that after the accident the plaintiff had told her that he had forgotten about or overlooked the peat moss chute holes and had stepped into one of them.
There was also testimony on the part of Ms. Guillot to the effect that the plaintiff’s conduct after the time of the alleged accident was inconsistent with conduct that would, be expected from a person injured in an accident. She testified that the plaintiff showed no visible signs of injury, refused her offer of first-aid and refused to let her fill out an accident report which was the normal operating procedure of the nursery. The plaintiff’s refusal to allow an accident report to be filled out prevented an immediate investigation of the facts surrounding the accident.
The plaintiff testified at trial that after the accident he apologized to a female nursery employee for “crying out” when he allegedly fell. However, this employee was never produced at trial by the plaintiff to corroborate his own testimony.
Additionally, the plaintiff did not seek medical attention until December 10th, almost two weeks after the alleged accident. At trial, the depositions of physicians that treated the plaintiff were read into evidence. And, although it was the testimony of these doctors that the plaintiff was suf *453 fering from back and neck problems, the evidence in the record clearly reflects the fact that the plaintiff had been involved in numerous prior accidents, both job-related and automobile accidents, in which the plaintiff had sustained injuries to his back and neck, which necessitated that the plaintiff take substantial amounts of time off from work. In fact, the plaintiff underwent two surgeries to correct these problems prior to the date of the alleged accident. It was also brought out at trial that prior to November 30, 1979, the plaintiff was seeking a light duty job because of existing physical ailments. All of this evidence could lead the jury to reasonably conclude that the plaintiffs injuries were not the result of any alleged accident at Kent’s Nursery, but pre-existed the date of the alleged accident.
The plaintiffs credibility was also placed in question by the plaintiffs own testimony regarding a prior law suit regarding an automobile accident in 1965 or 1966. The plaintiff testified that because the other party’s insurance company refused to pay for ninety-eight (98) dollars worth of damage to his car, he became irritated and filed suit. Plaintiff claimed that only after the refusal of the insurance company to pay and upon the recommendation of an attorney did the plaintiff consult a physician and complain of headaches and whiplash.
The jury, after considering all of this evidence, obviously accorded very little weight to the plaintiffs assertions and testimony. The evidence in this case is sufficient to furnish a reasonable factual basis for the jury’s determination that (1) no accident occurred, or (2) if the accident did occur, that the plaintiff suffered no injury, or (3) if the accident did occur and the plaintiff did suffer injury, that the accident and injury were not caused by any negligence on the part of the defendant. Therefore, we find the jury’s determination that the plaintiff did not prove by a preponderance of the evidence that he suffered an injury which was caused by the negligence of the defendant is not clearly wrong or manifestly erroneous.
ASSIGNMENT OF ERROR NUMBER 2
In their second assignment of error, plaintiff and South Central Bell contend that the jury committed manifest error in finding that he suffered no injury which was caused by a defect on the premises of Kent’s Nursery.
LSA-C.C. Art. 2317 provides that:
“We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.”
LSA-C.C. Art. 2322 provides that:
“The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.”
In Entrevia v. Hood, 427 So.2d 1146 (La.1983), the Louisiana Supreme Court explained the application of Articles 2317 and 2322 as they relate to a building owner’s liability.
“Accordingly, in order to recover in strict liability under Article 2317 or 2322 against the owner of a building, the injured person must prove that the building or its appurtenances posed an unreasonable risk of injury to others, and that his damage occurred through this risk. Upon proof of these elements, the owner is responsible for the damages, unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. The owner is absolved from his strict liability neither by his ignorance of the condition of the building, nor by circumstances that the defect could not easily be detected. Olsen v. Shell Oil Co., supra; Loescher v. Parr, supra.
* * * * * *
The requirement that an injured person in order to recover under Article 2317 or 2322 must prove that the risk from which his damage resulted posed an *454 unreasonable risk of harm places a limitation on a building owner’s strict liability. He cannot be held responsible for all injuries resulting from any risk posed by his building, only those caused by an unreasonable risk of harm to others.” Entrevia v. Hood, 427 So.2d 1146, at pages 1148, 1149 (La.1983).
In the case at hand, the jury heard testimony that the attic level of the greenhouse was not an area to which customers or visitors to the nursery had access but rather was an area of limited access only to employees. The jury also heard testimony and viewed evidence that showed that the attic area was well-lighted, and that Mr. Obey had expressly warned the plaintiff of the newspaper covered peat moss chute holes in the metal trough. There was also evidence presented to show that there was a clear and direct pathway to the area where the plaintiff was working which was expressly provided by Kent’s Nursery and its employee, Mr. Obey.
The jury also considered the fact that the plaintiff was a trained and experienced PBX installer who was familiar with work assignments in attics and who was aware of company policy that advised against walking on the telephone customer’s equipment while working on the customer’s premises. The jury additionally viewed and considered the testimony of an architect, Mr. Mann, who used a video tape and diagrams depicting the attic area. Mr. Mann testified that the metal trough was ideally located under the horizontal beam because of its diminished clearance.
In light of this overwhelming amount of evidence the jury obviously chose not to accept the plaintiff’s assertions, which were supported only by his own self-serving testimony, and concluded that the building presented no unreasonable risk of harm to the plaintiff. We therefore find the jury’s determination that the plaintiff did not prove by a preponderance of the evidence that he suffered an injury which was caused by the negligence and defects in the building of Kent's Nursery was not clearly wrong or manifestly erroneous.
ASSIGNMENT OF ERROR NUMBER 3
The plaintiff’s and South Central Bell’s third assignment of error, alleging that the special verdict absolving the appellees of negligence and strict liability is manifestly erroneous and contrary to the law and evidence presented in this matter, is indistinguishable from the plaintiff’s first two assignments. However, plaintiff contends that these proceedings should be remanded to the trial court for consideration of additional evidence so as to prevent a miscarriage of justice in view of the peculiar circumstances presented in his brief.
Having already found the plaintiff’s first and second assignments of error to be without merit, we additionally find that this assignment also lacks .merit. And, although plaintiff urges us to remand this case for additional evidence to be introduced, he has not indicated what evidence would be presented, what it would prove, or how there would be a miscarriage of justice if we do not remand the matter. We therefore find that there is no reason to remand this case for the presentation of additional evidence.
For the reasons set forth above, we affirm the jury’s verdict in the trial court and we assess the costs of this appeal one-half to the plaintiff-appellant and one-half to the intervenor-appellant.
AFFIRMED.